BARBER ASPHALT PAVING COMPANY v. ULLMAN, *Appellant.*

In Banc, February 9, 1897.

1. **Municipal Corporation:** STREET IMPROVEMENT: CONTRACT: GUARANTY. The provisions of the charter of St. Joseph, touching the cost of maintaining streets, etc., are cited by the court; and it is held that where a city contract for paving a street with asphaltum includes a guaranty to maintain the pavement so contracted to be laid without further cost for five years, the contract does not thereby put on the adjacent property owner any part of the cost of repairing, assuming that the city (not the property owner) is bound for repairs generally on the street. Such a guaranty is nothing more than a stipulation for a sound pavement at the outset. *Verdin v. St. Louis*, 131 Mo. 26, distinguished. (GANTT and BURGESS, JJ., dissenting.)

# 544 SUPREME COURT OF MISSOURI,

Asphalt Paving Co. v. Ullman.

2. ———: ———: CHARTER: SPECIAL TAX SUIT: TENDER. Under the charter of St. Joseph the defense that a street improvement was not executed in a good and workmanlike manner is only available (in a special tax suit) by way of reduction of the recovery, and upon tender of the value of the work actually done.

3. ———: ———: ORDINANCE. "Paved with Trinidad sheet asphaltum, according to specifications in the office of the city engineer," is a sufficiently definite description in an ordinance prescribing the materials of a street improvement.

4. ———: ———: CONTRACT: SEVERABLE STIPULATIONS. Stipulations in a city contract that are valid and severable from others (that are of doubtful validity) may be enforced. (*Neosho Water Co. v. Neosho*, —— Mo. ——, 38 S. W. Rep. 89, followed.)

5. ———: ———: ORDINANCE. An ordinance for letting of public work may properly refer for details to specifications on file in the city engineer's office.

6. ———: ———: ———: REPEAL. Where a new city charter keeps old ordinances in force until repealed and public work is let to be done in the manner provided by a later ordinance, the latter repeals any of the older ordinances as to the mode of letting such work.

7. ———: ———: CONTRACT: CONSTRUCTION. A contract between a paving company and the city of St. Joseph reviewed and *held* to provide that the company shall maintain in good order for five years the pavement as laid by the company; and *held* also that the contract was valid as against the objections discussed in the opinion. (GANTT and BURGESS, JJ., dissenting.)

8. Special Tax Bills: PRIMA FACIE EVIDENCE. The special tax bills sued upon for street improvements in St. Joseph, Missouri, are held *prima facie* evidence of the liability of the property to the charge therein stated. They place on the property owner the burden of proving any facts constituting a defense to the bills.

9. Municipal Officers: PRESUMPTION. The court applies the maxim, *omnia rite acta*, and assumes (in the absence of evidence to the contrary) that municipal authorities have proceeded in accordance with law in imposing special taxes for a street improvement.

10. Special Tax Bill: CITY OF ST. JOSEPH: INTEREST. Interest at fifteen per cent per annum is recoverable on special tax bills for street improvements in St. Joseph.

11. Practice: STRIKING OUT PLEADING: EXCEPTIONS. An exception to a ruling striking out a pleading must be taken by a bill filed at the term when that ruling becomes final. It is not sufficient merely to note such exception in the last bill of exceptions, filed at a subsequent term.

12. ———: WITNESS: DEPOSITION. A witness being in the court room and his deposition on file, the court properly excluded the offer of his deposition.

*Appeal from Platte Circuit Court.*—HON. W. S. HERNDON, Judge.

AFFIRMED.

Plaintiff had judgment in the circuit court on two special tax bills for an amount in excess of $2,500. Defendant appealed. The bills were based on an ordinance, approved, June 27, 1887, as follows:

"SPECIAL ORDINANCE NO. 280.

"*An ordinance* to provide for the paving of Sixth street from the north line of Hall street to the north line of Atchison street, with Trinidad sheet asphaltum and for the setting of the curb to the proper line and grade.

"*Be it ordained by the Common Council of the city of St. Joseph, as follows:*

"Section 1. That it is found and declared by the Common Council, that property holders owning a majority in front feet of the property owned by residents of this city, and fronting on Sixth street, between the north line of Hall street and north line of Atchison street, in the city of St. Joseph, have petitioned said Common Council to have said Sixth street, between the north line of Hall street and the north line of Atchison street of said city, paved with Trinidad sheet asphaltum, according to the specification therefor on file in the office of city engineer, and that the petition for such paving has been duly published according to law.

"Section 2. That said Sixth street, between the north line of Hall street and the north line of Atchison

VOL. 137 mo—35

street, of said city of St. Joseph, be paved with Trinidad sheet asphaltum in accordance with said petition and said specifications on file in the office of the city engineer, and that the total cost of such paving be, and it is charged, assessed and levied as a special tax bill on and against all real estate fronting on both sides of said Sixth street, between the streets aforesaid.

"Section 3. That the said paving of said Sixth street, between the streets named in the preceding section, be paid for in special tax bills made out and specified by the city engineer, against the several lots or parcels of land charged, as required by law; provided, however, that when the owner of any lot or parcel of ground fronting on Sixth street, within the streets herein above ordered to be paved, shall, within ten days after the letting of the contract for such work, notify the city engineer in writing, that he desires to pay for such work in five annual payments, the city engineer in pursuance of said notice, shall make out five separate special tax bills, bearing interest as required by law. Such five separate special tax bills shall bear interest at the rate of seven per cent per annum, from the date of the issue until the maturity thereof, and the passage of this ordinance, and the doing of said work shall not render the city liable to pay for such work, or any part thereof.

"Section 4. That the city engineer proceed forthwith to advertise for ten days, according to law and the ordinances of the city, for bids for paving Sixth street between the streets aforesaid, with Trinidad sheet asphaltum, according to said specifications on file in the office of the city engineer.

"Section 5. That the city engineer is hereby ordered to have the curbing on Sixth street, between the streets hereinabove ordered to be paved, set to proper line and grade.

"Section 6. That all ordinances or parts of ordinances in conflict or inconsistent with this ordinance be, and the same are, hereby repealed.

"*Approved* June 27, 1887.

[SEAL]          "THOMAS H. DOYLE, *Mayor.*

"Attest:   PURD B. WRIGHT, *City Clerk.*"

The contract for the work, on which the special tax is founded, is quite long. It contains a mass of particulars that are not relevant, as well as many that are vital, to this litigation. The following is an outline of its principal features, including quotations of important parts:

The parties named are the plaintiff, as principal and party of the first part, and the city of St. Joseph as party of the second part.

Then follow recitals of the letting to plaintiff as lowest and best bidder (under the above quoted ordinance No. 280) and a statement of the general scope of the contract.

"Whereas, the party of the second part did let unto the said The Barber Asphalt Paving Co., the work of paving Sixth street from the north line of Hall street to the north line of Atchison street with Trinidad sheet asphaltum and for the setting of the curb to the proper line and grade, by taking up and removing the old pavement, preparing the roadway and re-adjusting the curbing, laying a roadway pavement, to consist of a base of hydraulic cement concrete, covered with a wearing surface, composed of a mixture of refined Trinidad asphalt, heavy petroleum oil, sand and powdered carbonate of lime; making all proper connections and intersections with other streets and alleys; and to maintain paved street for a period of five years, without cost to the city; and to further maintain said paved street, for an additional period of five years, commencing five years after the work of paving

is completed and accepted, as by above mentioned ordinance specified, at the prices hereinafter stated:

"SPECIFICATIONS.

"Now, therefore, in consideration of the payments and covenants hereinafter mentioned, to be made and performed by said second party, the said The Barber Asphalt Paving Company, hereby covenant and agree to do the work of paving and maintenance above mentioned in a substantial and workmanlike manner, in conformity with the plans of such work on file in the office of the city engineer of the city of St. Joseph, and in strict obedience to the directions which may from time to time be given by said city engineer, or his duly authorized agents, and in accordance with the following:"

Then appear special provisions on the topics named, giving particular descriptions of the process of doing the entire work. Only the headings need be quoted:

"*Taking up old pavement.*"   *   *   *
"*Preparing roadway.*"   *   *   *
"*Curbing.*"   *   *   *
"*Concrete foundation.*"   *   *   *°
"*Sand.*"   *   *   *
"*Cement.*"   *   *   *
"*Mortar.*"   *   *   *
"*Concrete.*"   *   *   *
"*Hot composition.*"   *   *   *

"The wearing surface will be composed of:

"1st.   Refined asphalt.

"2d.   Heavy petroleum oil.

"3d.   Fine sand, containing no more than one per cent hydrosilicate of alumina.

"4th.   Fine powder of carbonate of lime. The Trinidad asphaltum (so-called), whether crude or re-

fined, as found in this market, contains from twenty to thirty-five per cent of impurities. The asphaltum herein specified is to be specially refined and brought to a uniform standard of purity and gravity."

Then follow minute directions touching the preparation and laying of the asphaltum. (We omit them.)

## "GENERAL STIPULATIONS."

"It is further expressly agreed between the parties hereto, that this contract is made subject to the conditions and stipulations which follow:

"1. The first party shall not assign or transfer this contract, or sub-let any of the work embraced in it."

2. Directions as to beginning different parts of the work.

3. The working force is to obey orders of city engineer, etc.

4. City engineer to judge of what work and material are to be included necessarily, if not specially mentioned, etc.

"5. The first party, upon being so directed by the engineer, shall remove or re-construct or make good at his own cost, any work which the latter shall decide to be defectively executed; and any omission to condemn any work at the time of its construction shall not be construed as an acceptance of any defective work; but the first party shall be required to correct any imperfect work whenever discovered, before final acceptance of the work."

6. First party to observe all ordinances as to obstructing streets; to hold the city harmless for any negligence of agents in doing the work, etc.

7. City engineer to pass on the quality of the materials to be used by the company, and the latter to conform to his decision.

"8. This contract is entered into subject to the approval or rejection of the council and subject to the city charter and ordinances in general."

A number of stipulations are made as to guards, signal lights, and other means to protect the public during progress of the work. City may stop the work for good and sufficient cause, on ten days' notice; and may have the fidelity of the performance to the contract investigated.

9. City engineer to have power to alter certain matters of detail if found necessary.

10. Stipulations as to effect of delays, etc.

11. Work to begin within one week after notice by city engineer, and to be finished within one year, subject to certain exceptions.

12. If the contract be assigned, or the company fail to perform or observe its terms, the city may cancel it, re-let the work and hold the company in damages.

13. Further provisions as to delays.

"*Rubbish*"—agreement to remove, etc.

*Note*—Meaning of words "contractor" and "city engineer," as used in the contract defined.

"Guarantee.—The contractor guarantees the pavement constructed under these specifications for five years, agrees to keep the same in repair during the period of said guarantee, and at the end of said period of five years to turn said pavement over to the city in good order and condition. Also, to propose in his said bid, an agreement to keep said pavement in repair for an additional term of five years, and to turn said pavement over to said city at the end of such additional term, in good order and condition; and it is further agreed that whenever any repairs of the streets are made necessary from the construction of sewers, the laying of pipes, or of telegraph wires, or from any

other disturbance of the pavement by parties acting under permits issued by the city, the contractor shall, upon notification from the city engineer, immediately make all the necessary repairs, in conformity with the specifications for this class of work. The cost of all such repairs exclusive of trenching and back filling, which shall be done by the parties who hold the permits, and in the same manner as now required by existing ordinances, shall be paid for at a price not to exceed the original cost per yard of the pavement.

"The said Barber Asphalt Paving Co., party of the first part, expressly guarantees the above work of repaving for the full period of five years after its completion, and binds himself, his heirs and assigns for the entire expense of all repairs which may from any imperfection in said work or materials become necessary; and if, at any time within five years after the completion and acceptance of the work of paving herein contracted for, and acceptance of the work of paving herein contracted for, the said work shall, in the judgment of the city engineer, require to be repaired, the said city engineer shall notify the said first party to make the repairs required. And if the said first party shall neglect to make such repairs within ten days from the date of service of such notice, then the city engineer shall have the right to cause such repairs to be made in such manner as he shall deem best, and the whole cost thereof, both for labor and material, shall be paid first by the city and then become a charge against the party of the first part."

      *     *     *     *     *     *     *

"And in consideration of the completion by said first party of all work embraced in this contract, in conformity with the specifications and stipulations herein contained, the party of the second part hereby

agrees to pay to the said first party, the following prices:

"For taking up the old gutter,  cross-walk, and roadway-paving, hauling away the serviceable old paving to places ordered, and for preparing roadway, including the filling of openings in old walls and pointing the joints between the curbstones, per square of 100 superficial feet... .. . .......................$2.25

For all curbing taken up and reset, per lineal foot. ... ........... .10

For new curbing furnished and set, per lineal foot,... ............. .70

For old curbing taken up, recut and reset per lineal foot.......... .12

For overhaul on all old material deposited by order of the city engineer in excess of 1,000 feet haul, one cent per cubic yard per 100 feet excess haul................ ........ .............. ..

For laying an asphalt pavement on a base of hydraulic cement concrete six inches deep, complete per square of nine superficial feet, $2.80— two dollars and eighty cents.

For maintenance per annum, per square of nine superficial feet, $0.10 (ten cents)."

&ast;     &ast;     &ast;     &ast;     &ast;     &ast;     &ast;

"*Manner of Payment for Paving.*—When all the work of paving embraced in this contract is fully completed, agreeable to the specifications and stipulations of this agreement, and accepted, by the city engineer, said engineer shall cause a careful measurement of said work to be made, and compute the costs thereof according to the terms and prices of this agreement, and levy and assess the same as a special tax against each lot of ground chargeable therewith in the names of the owners thereof.  And said special tax bills shall be made out by the city engineer, and by him registered in his office in full and delivered to the party of the first part, in whose favor they are issued for collection, and his receipt taken in full of all claims against the city on account of said work.

"*Manner of Payment for Maintenance.*—The work of maintenance shall be paid for by the city, upon the certificate of the city engineer approved by the common council, upon presentation of which to the auditor he shall draw his warrant upon the treasurer for the sum

so certified to be due, payable out of the funds in the city treasury set apart for the repair of the streets.

"The payment for maintenance shall be made semiannually; the first payment shall become due five years and six months after the said work of paving shall have been completed and accepted; and payments shall be made every six months thereafter, at the price hereinbefore mentioned; provided, that ten per centum of each semi annual payment shall be retained until the completion and acceptance of the work of maintenance.

"The said Barber Asphalt Paving Co., as principal, and C. E. Squires, Winslow Judson, W. D. B. Motter, S. A. Walker, and A. N. Schuster as securities, hereby bind themselves and their respective heirs, executors, or administrators, unto the city of St. Joseph in the penal sum of sixty thousand dollars lawful money of the United States, conditioned that in the event the said Barber Asphalt Paving Company shall faithfully and properly perform the foregoing contract, according to all the terms thereof, and shall as soon as the work contemplated by said contract is completed, pay to the proper parties all the amounts due for material and labor used and employed in the performance thereof, then this obligation to be void, otherwise of full force and effect, and the same may be sued on at the instance of any material man, laboring man, or mechanic, for any breach of the conditions thereof; provided, that no such suit shall be instituted after the expiration of ninety days from the completion of the above contract.

"And, also, for the faithful performance of all and singular the terms and stipulations of this contract so far as it relates to the maintenance of the aforesaid work of repaving in every particular, they, the said Barber Asphalt Paving Co., as principal, and C. E. Squires, Winslow Judson, W. D. B. Motter, S. A.

Walker, and A. N. Schuster, as securities, parties of the first part, do hereby bind themselves and their respective heirs, executors, or administrators, unto the said city of St. Joseph, party of the second part in the penal sum of thirty thousand dollars, lawful money of the United States, which may be sued for and recovered in full before any court of law having a competent jurisdiction to try the case.

"In witness whereof, the said Barber Asphalt Paving Co., as principal, and C. E. Squires, Winslow Judson, W. D. B. Motter, S. A. Walker, and A. N. Schuster, as securities, parties of the first part, have hereunto set their hands and seals respectively, and the city of St. Joseph, party of the second part, acting by and through its city engineer aforesaid, has subscribed these presents, the day and year first above written.

"THE BARBER ASPHALT PAVING CO., [SEAL]

"By C. E. SQUIRES, agent, and attorney in fact.

"C. E. SQUIRES, [SEAL]

"WINSLOW JUDSON, [SEAL]

"W. D. B. MOTTER, [SEAL]

"S. A. WALKER, [SEAL]

"A. N. SCHUSTER, [SEAL]

"CITY OF ST. JOSEPH, by M. J. MCCABE, *City Engineer.*

"CITY COUNSELOR'S OFFICE.

"City of St. Joseph, August 1, 1887.

"The securities and bond aforesaid are hereby approved as sufficient.

"W. B. JOHNSON, City Comptroller."

"City of St. Joseph, August 1, 1887.

"The foregoing contract and bond are in due form according to law, and are hereby approved.

"THOS. F. RYAN, City Counselor.

"City of St. Joseph, August 2, 1887.

"The foregoing contract and bond have been this day approved by the common council of the city of St. Joseph.

"*Attest:*         PURD B. WRIGHT, City Clerk."

*S. S. Brown, James W. Boyd,* and *Ben J. Phillip* for appellant.

(1) "It is a well settled principle that authority to charge private property with the cost of municipal improvements is confined within the limits prescribed by the charter and ordinances passed in conformity therewith; that proceedings to this end are *in invitum* purely statutory, and therefore to be strictly construed." *Cole v. Skrainka,* 37 Mo. App. 427; s. c., 105 Mo. 303; *Kiley v. Oppenheimer,* 55 Mo. 374; *Leach v. Cargill,* 60 Mo. 316; *Construction Co. v. Geiss,* 37 Mo. App. 509; *Worthington v. City,* 82 Ky. 267.    (2) It must be conceded that the tax bills sued on are void if the contract under which the work was done for which the bills were issued is void. *Keating v. City of Kansas,* 84 Mo. 419; *Cole v. Skrainka,* 37 Mo. App. 427; *Construction Co. v. Geiss,* 37 Mo. App. 509; *Mayor, etc., v. Eschbach,* 18 Md. 276; *McDonald v. Mayor,* 68 N. Y. 23. (3) If the contract was not let by the parties to whom is delegated by the charter and ordinances the sole authority to make it; or, in other words, if it was entered into by one who had no authority to make it, the agreement is absolutely void. *Saxton v. Beach,* 50 Mo. 488; *Saxton v. City,* 60 Mo. 153; *Irvin v. Devors,* 65 Mo. 625; *Cape Girardeau v. Fugen,* 30 Mo. App. 558; *City ex rel. v. Wilshire,* 47 Mo. App. 132.    (4) This power having been reposed in both the mayor and common council, neither the mayor, without the council, nor the council without the mayor, could enter

into or make a valid contract. The contract is therefore void. *Saxton v. Beach*, 50 Mo. 488; *Saxton v. City*, 66 Mo. 153; *Irvin v. Devors*, 65 Mo. 625; *Cape Girardeau v. Fugen*, 30 Mo. App. 558; *City ex rel. v. Wilshire*, 47 Mo. App. 132. (5) The charter does not give to the city engineer or comptroller or both the power to make or enter into a contract on behalf of the city. R. S. Mo. 1879, sec. 4673; Rev. Ord. City of St. Joseph, chap. 9, secs. 1 and 2. (6) The contract is void because it provides not only for the paving of Sixth street, but also for keeping it in repair for a period of five years after the work is completed at the cost of the adjoining property owner. The cost of paving the street must be borne by the adjoining property, but the cost of repairing and keeping in repair the pavement of the street must be paid by the city out of the general revenue. R. S. Mo. 1889, sec. 1424; R. S. Mo. 1879, secs. 4786, 4787; Charter City St. Joseph; Laws 1887, p. 55, sec. 13; *O'Meara v. Green*, 16 Mo. App. 118; s. c., 25 Mo. App. 198. (7) And when this cost of repairing is included in a contract to pave the street and an attempt is made to compel the adjoining property owners on that street to pay the costs of repairs which is chargeable to all the taxable property in the city the contract and assessment under it is void. *Verdin v. St. Louis*, 27 S. W. Rep. 447; *Brown v. Jenks*, 32 Pac. Rep. 701; *Brown v. Mayor*, etc., 128 Mass. 282. (8) The ordinance authorizing the paving of Sixth street nowhere authorizes any contract to be let for the maintenance or repair thereof. (9) Nor does the ordinance, or the contract, or the "specifications," specify the materials with which the repairs are to be made. In consequence of which the repairs are unauthorized and the contract and assessment are void. R. S. Mo. 1889, sec. 1404; R. S. Mo. 1879, sec. 4781; *Verdin v. City*, 27 S. W.

Asphalt Paving Co. v. Ullman.

Rep. 447; *City ex rel. v. Wilshire,* 47 Mo. App. 125; *Sterling v. Galt,* 7 N. E. Rep. 471; *Galbreath v. Newton,* 30 Mo. App. 380; *Kankakee v. Potter,* 10 N. E. Rep. 212. (10) For the reasons above stated the court erred in sustaining plaintiff's motion to strike out part of defendant's answer, and in striking out the fourth paragraph thereof. (11) The first instruction given on behalf of plaintiff is erroneous because it authorizes a recovery of fifteen per cent interest per annum from date of bills. The verdict on each count is excessive. Constitution, art. 4, sec. 53; *Bayha v. Carter,* 26 S. W. Rep. 137. (12) Inasmuch as there were no specifications on file in the city engineer's office and the ordinance itself does not specify the materials of which the pavement was to be constructed the contract and assessment thereunder and the tax bills are void. R. S. Mo. 1879, sec. 4781; *Verdin v. City,* 27 S. W. Rep. 447; *City ex rel. v. Wilshire,* 47 Mo. App. 125; *City v. Galt,* 7 N. E. Rep. 471; *Galbreath v. Newton,* 30 Mo. App. 380; *Kankakee v. Potter,* 10 N. E. Rep. 212. (13) The court erred in excluding the deposition of Charles Campbell. Campbell resided in Buchanan county. R. S. Mo. 1889, sec. 3461. (14) The court erred in refusing defendant's instruction number 3. *King Hill Brick Co. v. Hamilton,* 51 Mo. App. 120; *Newton v. Galbreath,* 30 Mo. App. 380; *Bank v. Payne,* 31 Mo. App. 512; *Cole v. Skrainka,* 105 Mo. 303. (15) There is no provision in the ordinance for curbing or guttering; no authority to make any contract therefor and the charge for guttering and new curbing in the bill should be disallowed.

*H. K. White, J. W. Coburn, W. B. Norris,* and *Scarritt, Griffith & Jones* for respondent.

(1) Instruction number 1 given on behalf of respondent is correct. R. S. 1879, secs. 4783 and 4784;

*St. Joseph v. Anthony*, 30 Mo. 538; *Sheehan v. Owen*, 82 Mo. 458; *Cole v. Skrainka*, 105 Mo. 309; *Steffen v. Fox*, 124 Mo. 630; Dillon on Mun. Corp. [3 Ed.], sec. 812. (2) The first part of said instruction follows the language of the statute (sec. 4784, *supra*), which is as follows: "Such certified bill shall, in any action thereon, be *prima facie* evidence of the validity of the bill, of the doing of the work, and of the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bill." The following authorities discuss and enforce the foregoing provision of the statute: *St. Joseph ex rel. v. Farrell*, 106 Mo. 441; *Heman v. Payne*, 27 Mo. App. 481; *Keith v. Bingham*, 100 Mo. 300; *Ess v. Bouton*, 64 Mo. 106; *Donovan v. Coles*, 33 Mo. App. 161. (3) The authorities are unanimous in holding that a substantial compliance with the contract by the contractor, as stated in plaintiff's instruction, is all the law requires. *Cole v. Skrainka*, 105 Mo. 309; *Steffen v. Fox*, 124 Mo. 630. (4) Plaintiff's instruction number 1 is also correct in asking for fifteen per cent interest on tax bill from date of issue. R. S. 1879, sec. 4784; *City, etc., v. Allen*, 53 Mo. 57; *Ransom v. Cobb*, 67 Mo. 375. (5) Instruction number 3 given on behalf of plaintiff is correct. It was immaterial whether the pavement was a patent pavement or not. *Barber Co. v. Hunt*, 100 Mo. 22; *Morse v. Westport*, 110 Mo. 502; *Warren v. Barber Co.*, 115 Mo. 579; *Verdin v. St. Louis*, 131 Mo. 26. (6) Plaintiff's fourth instruction is correct, because the finding of the mayor and common council that the work was petitioned for, and that the petition was duly published according to law, is conclusive. R. S. 1889, sec. 1426; R. S. 1879, sec. 4788; *Dennison v. City of Kansas*, 95 Mo. 430; *Adkins v. Railroad*, 36 Mo. App. 662; *Smith v. Tobener*, 32 Mo. App. 601. (7) Plaintiff's fifth instruction is correct.

The value of the land charged with the lien is immaterial. *Keith v. Bingham,* 100 Mo. 306. (8) Campbell's deposition was rightly excluded, because he was present in the court room at the time it was offered in evidence and ready to testify. *Schmitz v. Railroad,* 119 Mo. 256; *Benjamin v. Railroad,* 34 S. W. Rep. 592. (9) The specifications for the work in the city engineer's office are expressly referred to in the ordinance providing for the work, and they thereby became part of the ordinance itself; the requirement, therefore, for adjusting curbing and putting in new curbing when the old is defective, is as much a part of the ordinance as the paving itself. *Galbreath v. Newton,* 30 Mo. App. 392; *Becker v. Washington,* 94 Mo. 375; *Moran v. Lindell,* 52 Mo. 229; *Carlin v. Cavender,* 56 Mo. 288; *Gallaher v. Smith,* 55 Mo. App. 116; *Brick & T. Co. v. Hull,* 49 Mo. App. 433. (10) The allegation of the answer that plaintiff included in its bill the cost of making repairs was properly stricken out by the court. The bill and the contract speak for themselves. The guaranty to keep the pavement in repair was valid. *Morse v. Westport,* 110 Mo. 509; *Gibson v. Owens,* 115 Mo. 270. (11) The alleged error of the court in striking out parts of the petition can not be raised in this court, for the reason that no exception was taken and preserved by the bill of exceptions allowed by the court at the term during which the order to strike out was made. R. S. 1889, secs. 2167, 2168; *Haehl v. Railroad,* 119 Mo. 336; *Keen v. Schnedler,* 92 Mo. 516; *State v. Ware,* 69 Mo. 332; *Carpenter v. McDavitt,* 53 Mo. App. 393; *Wentzville Tobacco Co. v. Walker,* 123 Mo. 669. (12) Public works are undertaken, as everyone knows, under authority delegated by law to public officers, and there is little or no reason why a property owner who has full notice of what is being done should be allowed to stand by in silence until the work is completed and

then escape paying for the benefit his property has received. *Johnson v. Duer*, 115 Mo. 381; Herman on Est. and Res. Adj., sec. 1221; *Ross v. Stackhouse*, 114 Ind. 200; original opinion in *Gibson v. Owens*, 21 S. W. Rep. 1110.

BARCLAY, J.—The action is upon special tax bills issued in regular form for an improvement on Sixth street in the city of St. Joseph. The statement opening the report of this appeal gives a sufficient outline of the ordinance and contract. The defenses to the bills will be severally taken up.

1. The plaintiff offered in evidence the special tax bills sued upon, with proof of the signature of the city engineer who issued them. Such a tax bill is by statute invested with the force of "prima facie evidence of the validity of the bill, of the doing of the work," etc., "and of the liability of the property to the charge stated in the bill." R. S. 1879, sec. 4784.

It is too well settled to require argument that the courts must give full effect to such provisions of law in regard to the sufficiency of official certificates of this sort as evidence of a valid tax. *St. Louis v. Hardy*, (1864) 35 Mo. 261; *St. Louis v. Armstrong* (1866) 38 Mo. 29; *Strassheim v. Jerman* (1874) 56 Mo. 104.

The tax bill, duly authenticated and read in evidence, placed upon defendant the burden of proving any fact on which he might rely to show its invalidity.

2. Defendant insists that the contract for the work was not properly let, and hence is of no binding force.

The fact that the mayor did not personally pass upon the contract is said to be a fatal blemish on the proceedings. The course followed was in substance this:

A special ordinance directing the improvement was duly enacted by the common council, and then ap-

proved by the signature of the mayor, June 27, 1887. (Its terms have been mentioned in the statement of the case.) The city engineer was thereby directed to advertise for ten days for bids, and all conflicting ordinances were repealed. He did advertise and no question is raised upon the terms of the advertisement. On receiving the bid of plaintiff, according to the call of the advertisement, a formal contract under seal was made, in due course, between the Asphalt company, as principal (and party of the first part) and the city of St. Joseph (by the city engineer) as the second party. That contract was also signed by several other parties as securities for its due performance by the party of the first part. The act of the engineer in executing the contract was, however, merely tentative, inasmuch as one term of the agreement declared that it was subject to the approval of the city council.

The securities and bond were approved by the city comptroller, who attested that approval by his signature. The city counselor did the same; and a like approval later by the common council is shown by the official certificate and attestation to that effect by the city clerk.

The contract as offered in evidence by defendant shows these facts.

The defendant's contention is founded on the language of an ordinance in force when the general charter for cities of the second class was accepted by St. Joseph. That ordinance provided that, "All contracts shall be awarded by the mayor and city council to the lowest reliable and responsible bidder," etc. By section 4816 (R. S. 1879) of the general charter of St. Joseph, all ordinances, etc., "in force, and not inconsistent with" the new charter were left operative until altered, modified or repealed by the common council.

VOL. 137 mo—36

By the old special charter (art. 2, sec. 4) the mayor was the presiding officer of the council, but under the general charter governing the facts under review, one of the council is chosen to preside. R. S. 1879, sec. 4630, now part of section 1242 of 1889.

The old ordinance above quoted was intended to express the same idea contained in section 4815 (R. S. 1879; sec. 1436 of 1889) touching the letting of contracts to the lowest bidder.

The general charter (sec. 4673, R. S. 1879; sec. 1294 of 1889) makes it the duty of the comptroller "in conjunction with the city engineer, to open and inspect all bids of contractors for public works, and to approve and safely keep all bonds given by contractors for the faithful performance of public contracts."

So far as the old ordinance may have contemplated personal action by the mayor upon contracts made for the city, it was subject to repeal by a later ordinance. Hence the contract in question here (if entered into in the mode prescribed by the ordinance for this particular work) is not subject to impeachment because of any want of conformity to the old ordinance. It is therefore not necessary to consider whether the new charter of itself lays down a line of procedure (in regard to letting of such contracts) at variance with the old ordinance. There is no room for doubt that the contract was duly entered into on the part of the city in a mode contemplated by the ordinance authorizing this work on Sixth street, as sanctioned by the subsequent action of the common council.

3. The tax bills are also challenged because, it is said, they include a charge for subsequent repairing of the street, under the name of "maintenance." Defendant argues that that burden should properly be borne by the city of St. Joseph (by reason of the terms of its charter) and that it can not, by any device, be imposed

upon the adjacent property.   There are some conflict-
ing contentions as to the effect of certain provisions
in the charter of that city in regard to its power to
assess the cost of repairing highways as a special tax
upon the adjoining realty.  R. S. 1879, secs. 4781,
4788, same as secs. 1404, 1426 of R. S. 1889.  The
sections just cited plaintiff claims confer such a power.
But then section 4786 (of 1879, same as section 1424
of the revision of 1889) opens with the statement that
"the cost of repairing and keeping in repair the pav-
ing and macadamizing of all streets and avenues shall
be paid out of the general revenue of the city."

It will not be essential at this time to solve any
difficulty of construction that may arise from the
sections mentioned.  For the present (and for argu-
ment only) the proposition asserted by defendant will
be assumed, namely: that the cost of repairs on the
finished street is properly chargeable to the city, and
not as a special tax lien upon the adjoining property.

We here touch the most interesting feature of the
present appeal.

Do the provisions of plaintiff's contract with the
city, in regard to the maintenance of the street, place
on the adjoining property any charge for the repairs
of the street after its completion?

There are two branches to this inquiry, one of a
technical, and the other of a substantial nature.

a.   The defendant by his answer set up (among
other defenses) the following:

"That in pursuance of its said contract to repair
said pavement for and during a period of five years,
plaintiff has at all times since the date of said contract
kept said pavement in repair, and in repairing said
pavement during said times has found it necessary to,
and it did, take up and replace nearly all of said pave-

ment, and that the cost of so repairing, taking up and replacing said pavement, during the said time, and the cost of repairing, taking up and replacing 'said pavement for the remainder of said five years, was and is and will be, many thousands of dollars, and that plaintiff in making its said bid and contract, contemplated and took into consideration, and included in its said bid and contract, the estimated cost of making said repairs, taking up and re-placing said pavement for said time, and same is included in each of the tax bills herein sued upon."

That part of the answer was stricken out by the court on motion of plaintiff. The bill of exceptions in the cause was allowed and filed as of the August term, 1893 (in fact, later than the August term, an extension of time having been obtained, under section 2168, at that term when the appeal was allowed). But the ruling, striking out the defense above quoted, took place at a term of court prior to the August term, 1893, and no exception to that ruling was preserved by any bill at that prior term; nor was the time to except to that ruling ever extended beyond the term when it was made. The correctness of the ruling is, therefore, not properly before the supreme court for revision on this appeal.

An exception to a ruling striking out a pleading (or part thereof) must be taken by a bill filed at the term when such ruling becomes final, or within time given so as to connect the exception with that term. R. S. 1889, sec. 2168. It is not sufficient to bring such a matter of mere exception into the final bill, filed at a subsequent term, when no bill preserving the exception was obtained at the proper time during the course of the proceedings. *Keen v. Schnedler* (1887) 92 Mo. 516 (2 S. W. Rep. 312).

*b.* What then is the effect of the contract as to the subject of repairs? The ordinance merely provides for the paving of Sixth street with asphaltum and for the proper setting of curbing on that street, according to certain specifications in the engineer's office. The ordinance makes no mention of repairs.

It was held in the *Verdin* case, 131 Mo. 26 (33 S. W. Rep. 480) that, where the city is bound to repair, it can not, by forcing a bargain on the contractor for a cheap rate of repairing (as a condition for letting a contract for reconstruction of a street) impose on the adjacent property, as a special tax for reconstruction, an uncertain and unascertainable portion of the expense properly chargeable to the city for the repairs. In that case the petition for injunction made a showing which was considered to substantially charge such a scheme. A majority of the court in banc held that scheme unlawful under the charter of St. Louis.

But at bar we have a case in which the record makes a different showing. A defense asserting a similar state of facts to that alleged by plaintiffs in the *Verdin* case has been stricken out and is not now available to the defendant. The contract itself, however, is before the court. But it reveals quite another sort of arrangement from that condemned in the *Verdin* case. The price to be paid for maintenance or repairs, as itemized in the contract, refers very plainly to maintenance during the second period of five years. That is evident from the stipulation touching the "manner of payment for maintenance" toward the close of the instrument, as well as from other passages quoted in the statement of the contract. The property adjacent is not charged for any part of the repairs during the first term of five years, and still less during the second term. The agreements of the plaintiff, the Asphalt company, in regard to maintaining the street in repair for five

years, free of cost to the city, apply only to "the pavement constructed under these specifications." If other repairs become necessary on account of the construction of sewers, laying of pipes, or other disturbances of the asphaltum street surface (under permits of the city) those repairs are to be paid for by the city (not by the adjacent property owners) at a price not to exceed the original cost per yard, according to the contract.

The validity of those provisions as to the city is a topic regarding which we shall more fully state our position in the next paragraph of this opinion. It is enough at the moment to say that the stipulations as to such repairs on account of the city (at prices to be paid in future) do not appear to impose on the property owners any charge for such repairs as part of the primary cost of the asphaltum street.

The "guarantee" of the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property, further than would be justly payable for a lasting pavement. The term for keeping the agreed work in repair, free of cost, is not longer than the reasonable period such a work should last, if properly done at the outset. It certainly is proper for the city to require of the contractor for such improvements a sound and durable piece of finished work. The agreement to maintain the work free of cost for five years is (so far as this record shows) nothing more than a guaranty that the work shall be of that character.

The learned dissenting members of the court consider that the contract imposes upon the taxable property some part of the after repairs, payable properly by the city. They have quoted some parts of the contract to support their views. The passages from which the quotations are taken appear at large in the state-

ment accompanying this opinion, as well as considerable context which also should not be lost sight of.

The paramount issue is upon the construction of the contract, taken as a whole. Does it mean to provide that the paving company shall keep the entire street in repair for five years, or does it mean to provide that the company shall simply maintain, in good order, for that period, the street as plaintiff agreed it should be made? We think the latter its true meaning. The city had the right to determine whether the thoroughfare should be improved with macadam, gravel, asphaltum, granite or other material. It had the right to put down a pavement good enough to last at least five years, and to charge its cost against the adjacent property. Now what difference is there, in principle, between a municipal agreement that merely calls for the construction of such a substantial street, and a municipal agreement which adds to such a call terms requiring the contractor to make good (during five years) his contract to furnish the sort of pavement he proposes to supply?

The proper laying of pavements of the sort here in view is a matter of skill which few but experts can fathom. An agreement to keep such a pavement good for five years (as contracted to be laid) seems to us a far more practical and efficient way of clinching the agreement for a sound article than any amount of stipulations to govern the mere construction of the street at the outset. Such a *"guarantee"* (as it is aptly termed in the contract) is a prudent and business-like mode of securing what the city has a right to demand in respect of the quality of work desired. Such an agreement does not of itself necessarily imply any unlawful increase of the first cost of a well constructed street. Such a street is what the contract before us is designed to secure. The guaranty is entirely different

in principle from an agreement to keep the whole street in repair for a term of years, irrespective of the causes which might necessitate repairs. That distinction is plainly pointed out in the *Boyd* case (1896) 92 Wis. 456 (3 A. & E. Corp. Cas. N. S., 652, 66 N. W. Rep. 603) and in *Brown v. Jenks* (1893) 98 Calif. 10 (32 Pac. Rep. 701).

In *Fehler v. Gosnell* (1896) Ky. (35 S. W. Rep. 1125) the remarks in the *Brown* case on that distinction are approved.

In *Schenectady v. Union College* (1892) 66 Hun, 179, an agreement similar to that here in question was sustained, as was another in *Cole v. People* (1896) 161 Ill. 16 (43 N. E. Rep. 607).

There is nothing in this contract, or elsewhere in the case, that makes it clear to us that any part of the cost of repairing the finished street has been put upon the taxable property by reason of the mode followed by the city in having this work done.

It is our duty to assume (in the absence of a showing to the contrary) that the municipal authorities have proceeded in accordance with law, and not in violation thereof. Action by city officials in regard to the imposition of special taxes for a street improvement comes within the protection of the general maxim that public officers are presumed to have rightly acted until the contrary is clearly made to appear.

It is a grave error to suppose that the law looks with any disfavor upon these special tax bills for street improvements. They are to be treated with the same fairness and justice that should be accorded all public acts of the civil authority, when taken in conformity to law. And a want of conformity to law is not to be presumed as to such governmental action any more than to other proceedings of public functionaries. *Farrar v. St. Louis* (1883), 80 Mo. 393.

4. By the foregoing rulings, however, we intend no intimation of opinion as to the effect of the terms of the contract touching maintenance for the second period of five years. That is the period to which the item of cost for "maintenance per annum" (as given in the schedule of prices) obviously refers. Whether further municipal legislation will be essential as a basis for any draft on the municipal revenue on that account is not a question of present concern. There is no charge of any kind in the present bill on that account, nor was it shown (or attempted to be shown), at the trial, that the agreement by the Asphalt Company to maintain the pavement at the city's cost, for the second period of five years, had any bearing on the original cost of the improvement or that it added, in any way, to the expense properly authorized by the charter to be imposed as a special tax on the neighboring property.

The stipulations in regard to the original construction (and maintenance free of charge for the first term of five years) are readily severable from the agreements in regard to maintenance for the second term of five years. *Neosho Water Co. v. Neosho* (1896), 136 Mo. 498 (38 S. W. Rep. 89). The former stipulations may be valid and enforceable by the contractor, even if the latter are not, for want of proper preliminary municipal action to support them. As to the latter we give no opinion. The validity of those agreements we regard as irrelevant to the issues of this appeal. As the case at bar now stands, the latter agreements form no barrier to the collection of the special taxes in suit, imposed for the first cost of the asphaltum street. *Neenan v. Smith* (1875), 60 Mo. 292. Those agreements are a matter between the city and the contractor, and are not so connected with the stipulations for the work represented by the special tax bills as to impair the validity of the latter. Nothing properly before the court at

present discloses that any of the agreements for maintenance of the improved street had a tendency to increase in anywise the special taxes levied on the abutting real property for the original work.

5. Nor is the ordinance deficient in omitting to properly mention the materials for the proposed work. "Paved with Trinidad sheet asphaltum, according to specifications on file in the office of the city engineer," is a sufficiently definite description for the purposes of an ordinance, under the precedents in Missouri on that point. *Sheehan v. Gleeson* (1870) 46 Mo. 100; *Moran v. Lindell* (1873) 52 Mo. 229; *Carlin v. Cavender* (1874) 56 Mo. 286.

6. It is claimed by defendant that the whole job was not done in a good and substantial manner, as agreed. The finding of the jury indicates that the work was executed in substantial compliance with the contract. Furthermore, the defense that the contract was not performed by the contractor in a workman-like manner, could only be made (according to the express terms of the charter) by way of reduction in the amount of the bill, and then only upon condition of a tender of the sum justly due for the work as actually done. It is not pretended that any such tender was shown in the case at bar, and it is not asserted that there was a total failure to perform. R. S. 1879, sec. 4784.

7. The penalty of 15 per cent per annum, by way of interest for delay, is expressly authorized by the charter, and there was no error in permitting a recovery therefor. R. S. 1879, sec. 4784.

8. A minor point is raised upon the exclusion of a deposition of a witness, Mr. Campbell, on behalf of defendant. He resided in Buchanan county, and the trial was had in Platte county. But he was shown to be present in the court room when the deposition was tendered in evidence. No fact was disclosed which

might have made his deposition admissible on exceptional grounds; for instance, for purposes of impeachment, or as an admission, or otherwise. There was no error in excluding the deposition in such circumstances. *Schmitz v. Railroad* (1893) 119 Mo. 256 (24 S. W. Rep. 472); *Benjamin v. R. R.* (1896) 133 Mo. 274 (34 S. W. Rep. 590).

9. The specifications which were to be found in the engineer's office, when the ordinance was passed, were plans and profiles of the work required on Sixth street, with blank forms which gave the particulars demanded by the engineer (in the doing of the class of work here in question) in the same terms as those which appear in the contract (finally made with the city by the plaintiff) under the head of "*Specifications.*" The latter contained elaborate directions for the work from beginning to end, and thus made the intent of the ordinance definite and clear. The specifications defined what was meant by the ordinance as to the subject of curbing, as well as concerning all other branches of the projected improvement. Curbing was, nevertheless, mentioned in a general way (as an item of the improvement) in the fifth section of the ordinance. The reference in the ordinance to the specifications in the office of the engineer was quite sufficient as a description of such work. It was not necessary for all the details of the working plan to be developed in the ordinance itself. *Becker v. Washington* (1888) 94 Mo. 375 (7 S. W. Rep. 291).

10. We find none of the objections to the circuit judgment tenable. The effect of the special tax bills as prima facie evidence has not been overcome. The judgment should be affirmed. It is so ordered, Judges GANTT and BURGESS dissenting.

Chief Justice BRACE and Judges MACFARLANE, SHERWOOD, and ROBINSON concur in the foregoing opinion.

GANTT, J. (*dissenting.*)—We most respectfully dissent from the opinion of our learned brother Barclay.

The substantial point for adjudication is the validity of the tax bills sued upon. If they were issued for work directed by the city council by its ordinance and the ordinance and contract conform to the charter, then the judgment should be affirmed; if not, in our opinion, it should be reversed.

St. Joseph in 1887 was a city of the second class as defined by our statutes. The statutes governing such cities constituted its charter. The power of the authorites of the city to pave and repair its streets is to be found alone in the said charter as to how the cost of repairing the streets of said city is to be paid.

Section 4786, R. S. 1879, provides: "The cost of repairing and keeping in repair the paving and macadamizing of all streets and avenues shall be paid out of the general revenue of the city."

It seems to us language could scarcely be more unequivocal than is to be found in these words. The mind of the lawmaker when drawing that section was directed to the sole question of providing for the ways and means of meeting the necessary expenses of *repairing streets and* avenues. Already in sections 4781, 4782, 4783, and 4784, with the utmost particularity, the legislature had authorized the common council to cause to be graded, constructed, reconstructed, paved or otherwise improved and repaired, all streets, sidewalks, alleys and public highways within said city and charged the abutting property on both sides of such street with the cost of such grading, constructing and reconstructing and paving and had provided for an assessment of such abutting property and the apportioning of the costs of such improvement and the issu-

ing of tax bills therefor. But such tax bills were to be issued solely for *the work done* in grading, paving, constructing, reconstructing or macadamizing said street and by a special provision in section 4784 such tax bill was only *prima facie* evidence of the *doing of the work,* and of the furnishing of the materials charged for and of the liability of the property to the charge stated in the said bill and the right was reserved to the abutting owner to plead "in reduction of the bill any mistake or error in the amount thereof, or that the *work therein mentioned was not done in a good and workmanlike manner.*" Section 4788 was not, in our opinion, designed to confer any power either to construct or repair but simply marked out the mode of procedure when either grading, constructing or reconstructing, or repairing was proposed. It provided what should be a sufficient petition for such improvements when a petition by other provisions of the charter was required; for its publication and for a hearing before the council of all objections to such improvement.

That section then further provides that if in the ordinance which was essential to authorize such improvement, the common council should recite a finding by them that the work had been petitioned for and that it had been published according to law, such finding should be *conclusive for all purposes.* It further provided for joining tax bills in one suit and for separate judgments on each and for tax bills on corner lots for sidewalks, curbing and guttering. To our minds this section in no manner conflicted with the plain mandate in section 4786 requiring that "the cost of repairing and keeping in repair the paving and macadamizing of the streets should be paid out of the general revenue of the city." It was not a new grant of power. It simply dealt with the matter of procedure for enforcing the previous sections of the charter. Pro-

ceeding, as we do, to consider the tax bills in suit, upon the assumption that the charter places the burden and the whole burden of "repairing and keeping in repair" the streets upon "the general revenue of the city," and if it does not, still the ordinance in this case nowhere imposes that burden upon the abutting owners, the decisive inquiry is, did not the contract under which the street in question was paved and for which these tax bills were issued put a part, at least, of the burden upon said abutting lot owners?

The contract recites on its face that the city let to the paving company the work of paving Sixth street from the north line of Hall to Atchison streets with Trinidad asphaltum, specifying the constituent elements of the proposed pavement, and said company agreed *"to further maintain (said) paved street for a period of five years without cost to the city."* In another clause, *"the said paving company guarantees* the pavement constructed under these specifications *for five years, agrees to keep the same in repair during the period of said guarantee and at the end of said five years to turn said pavement over to the city in good order and condition.* Also to propose in his said bid, an agreement to keep said pavement in repair for an additional term of five years and turn the same over to the city at the end of such additional term in good order and condition and it is further agreed that whenever any repairs of the streets are made necessary for the construction of sewers, the laying of pipes, or of telegraph wires or from any disturbance of the pavement by parties acting under permits issued by the city, the contractor shall upon notification from the city engineer immediately make all necessary repairs in conformity with the specifications of this class of work. The cost of all such repairs exclusive of trenching and back filling which shall be done by the parties who hold the permits and in the

same manner as now required by existing ordinances shall be paid at a price not to exceed the original cost per yard of the pavement.''

In another clause said Barber Asphalt Paving Company, party of the first part, *expressly* guarantees the above work of repaving for the full period of five years after its completion and *binds itself, its heirs and assigns for the entire expense of all repairs which may from any imperfection in said work or materials become necessary,''* and if the work at any time within five years after its completion in the judgment of the city engineer *needed repairs,* he should notify said contractor to make them.

Some question is raised as to the pleadings but we take it that we all concur in holding that the ordinance and the contract under which this claim is asserted are both before the court and to entitle plaintiff to recover from the abutting property holder it must appear that there has been a fair and substantial compliance with the conditions precedent whether prescribed by the charter or the ordinance; *Keating v. Kansas City,* 84 Mo. 415; *Cole v. Skrainka,* 105 Mo. 303; *Verdin v. St. Louis,* 131 Mo. 26; that the authority to charge this lien on defendant's property must be found in the charter and an ordinance passed in pursuance thereof. This, the answer puts in issue. Now it is conceded by our learned brother that the ordinance makes no mention of repairs and we hold that the charter imposes all repairs ''upon the general revenue.'' If, then, this contract places the burden of repairs in whole or in part on the property of the abutting owner, it conflicts with the charter and has no support in the ordinance. Does it do so? Our learned brother says it does not because ''the adjacent property is not charged with any part of the repairs during the first term of five years, and still less during the second term.''

It is this statement which compels our dissent for we hold that when the city authorities stipulated that the Paving Company *"should maintain this pavement for a period of five years without cost to the city,"* it thereby cast upon the abutting owners the cost of that maintenance for five years in the teeth of the charter. It is calling for too much credulity to ask us to believe that any paving company or contractor would assume the burden of maintaining and repairing this pavement for five years without having estimated the cost of so doing and included in his bid the cost of so doing. If so, who pays it? Does not the abutting owner who pays the entire cost, repairs and all, when the city is in terms exempted from that burden?

As said Judge Winslow for the supreme court of Wisconsin in *Boyd v. Milwaukee*, 3 Am. & Eng. Corp. Cases (N. S.) 652 (March term, 1896): "It will not do to say that these agreements *to repair are* in effect guaranties of material and workmanship. Such a contention is made here, and an affidavit was introduced showing that the life of such a pavement, if properly laid, was at least ten years, and that it would require no repairs at all for five years. *If the agreements to repair were confined to repairs made necessary by defective workmanship or material, the argument would be entitled to serious consideration.* But they go further. *They cover, in terms, everything that may happen to the pavement, except the cutting through it for the purpose of laying certain pipes.* Just how far these agreements might go in case of damage to the pavement from unusual causes, it is not necessary to consider, nor is the question properly here. It is sufficient to say that it is very evident that no one in possession of good business sense will make such a contract without considering and charging for the very extended liability which he assumes of keeping the pavement in repair

for five years, and thus the property owner is compelled to pay for that which the law charges upon the *ward in general.*"

In the *Verdin* case, 131 Mo. 26, the board required the contractors to propose that "the streets should be maintained in good condition for a term of nine years, beginning one year after completion" and it was held that "the obvious intent of that scheme was to put upon the owner of abutting property a portion of the repairs and the city would not be allowed to shuffle off on the adjacent property owners such expenses."

Our learned brother says that "the agreement to maintain the work free of cost to the city for five years is (so far as this record shows) nothing more than a guaranty that the work shall be of that character." (To wit, "a sound and durable piece of finished work.") "It is different," he says, "in principle from an agreement to keep the whole street in repair for a term of years."

We are unable to perceive the distinction. Certainly it is as objectionable to agree to keep a defined section of a street in repair as the whole street in so far as it affects the abutting owners and the pavement is the street as used in this contract.

We understand from his opinion that he concedes the great weight of authority to be that if the contract binds the contractor to keep the street in repair regardless of the cause of the defect and does not confine his liability to repair to defects arising out of the imperfection of his materials or inferior workmanship, then it imposes a burden on the abutting owners which the law casts upon the city at large. So we are agreed as to the law.

It becomes then a question of fact. Now this contract is identical in terms with the one condemned in the *Boyd* case. Here, as in that case, the agreement to repair for five years is not restricted or

confined *to repairs made necessary* by defective workmanship or material furnished by the contractors but it covers all repairs rendered necessary during that time whether caused by inferior workmanship and defective materials used by the paving company or by the wear and tear of the general traffic over the streets. So that if we read the *Boyd* case aright, there is no such distinction between the contract in that case and the contract before us in this case.

We agree, "that the distinction is plainly pointed out in the *Boyd* case," and it is equally plain to us that this contract falls within the category condemned by that case and not within the supposed case of a contract guaranteeing merely the work and materials of the contractor.

In *People ex rel. v. Maher*, 56 Hun, 81, the common council passed an ordinance requiring the board of contract and apportionment to require the contractor to agree to keep a pavement of granite block in repair for seven years. The charter provided that the repairing of all streets paved with granite blocks should be a charge upon the city. It was held that such a provision in a contract for laying granite block pavement *was unauthorized and tended to increase the burdens of abutting* owners and the contract was set aside as illegal. That contract also we conceive to be identical in principle with the one before us.

Afterwards in *Schenectady v. Union College*, 66 Hun, 179, *People v. Maher*, *supra*, was before the same court for review and speaking of the provision in the *Maher* case the court said: "If this contract (that is, *Schenectady v. Union College*) is subject to the same objection it should share the same fate, if the objection was properly raised in the court below."

"The referee was not asked to find, and did not find, that this provision in the contract increased the expense

of the work or enhanced the amount of the assessment. But this question is, I think, fairly here, for adjudication. But I am inclined to concur in the views of the learned referee that this case is substantially different in some of its essential particulars from that of the *People v. Maher, supra.* In that case there was an *express contract to keep in repair for seven years.* In this case the clause referred to in the contract had reference solely to the substantial character of the work performed and materials used in the performance of the contract." So that to us it is obvious that the *Schenectady* case not only does not overturn the *Hall v. Maher* case but fully confirms it and merely holds that when the guaranty or contract is limited to the workmanship or materials of the contractor and is not an absolute agreement to repair from whatever cause necessary, it did not violate the charter. The *Schenectady* case, however, was overruled on another point in 144 N. Y. 241.

In *Hall v. Maher* it was urged just as here that the agreement was merely a warranty that the pavement would last seven years without repairs and that such a warranty would be a benefit but the court met the suggestion in these words: "But the difficulty arises from the circumstance that the property owners are to pay *only* for the paving, and the city for subsequent repairs. Anything, therefore, which throws on the property owners more than the burden of having the pavement well constructed in the outset is unjust to them." And again, "It is the duty of the city to make the repairs. But by this contract they make the property owners liable to pay, not only for the laying of the pavement, but for making repairs for seven years. And every person who was to bid for the contract was obliged to agree to these terms. * * * If, as the contractor

claims, no repairs will be needed, then there was no need of such a clause.''

Neither in our opinion can this contract be distinguished from that which was ruled upon in *Brown v. Jenks* by the supreme court of California, 32 Pacific Rep. 701. In that case as in this neither the law nor the resolution of the council letting the work authorized an agreement to keep the street in repair for five years but the contract included a stipulation that the contractor should give a bond conditioned ''for keeping the street so improved in thorough repair for five years from the completion of the contract.'' The court held that ''the bond was not only unauthorized by the statute but the requirement changes, and may increase the burdens of the property owner.''

''It is manifest,'' said the court, ''that the obligation to keep the street in repair for five years is a burden *which one would not undertake for nothing.* Therefore a contractor would charge a higher price for the work when he was forced to contract also for repairs. The expense undertaken is indefinite; and the property owner must pay for them in advance, whereas the statute provides for repairs after the necessity for them appears. Then, it being contingent, he will be paying for repairs which may never be required.''

In that case it was suggested, as it is here, by our learned brother, that ''the specifications were a mere guaranty that the work should be well done,'' and ''would not require repairs for five years'' but said the court: ''The lot owner can not be made to pay for such a guaranty, which may become worthless before the time has elapsed. Officers are provided and vested with the power, and charged with the duty of seeing the work well done. A bond can not be substituted for the performance of this duty. Besides, *it is for all repairs,* and not such as may result from defects in the work.''

In this case the unequivocal and unqualified agreement "to keep the pavement in repair during the period of the guarantee and at the end of five years to turn it over to the city in good order and condition" is not qualified by the subsequent clause which stipulates and binds the company further for the expense of *all repairs* which may become necessary from any imperfection in said work or materials." These covenants are distinct and cumulative and both must be given their full significance and so construing them we think the inevitable result is that it is an indirect effort to saddle upon the individual a burden which the statute intended should be put upon the public which used the street.

*Cole v. People*, 161 Ill. 16, is cited as sustaining the view that a stipulation in the contract for keeping in repair does not render the ordinance under which it was let void. The court in that case held that in *a collateral attack* on the ordinance the bond filed with the specifications was no part of the ordinance and while expressing the view that a city might require a guaranty for a specified time as a part of the warranty of the fitness of the material used, the court evidently disposed of the defense on the ground that it was not available under the laws of Illinois in the proceeding for judgment for the tax, and declined to say whether it would have been allowed if presented upon the application for confirmation in the original proceeding. Certainly there is nothing in the opinion which overturns or in our opinion weakens the many well considered cases already cited from other states which hold to the views expressed by the majority of this court in *Verdin v. St. Louis*, 131 Mo. 26 (33 S. W. Rep. 480). We still adhere to the ruling in that case and consider the effect to cover up repairs under the name of guar-

antee as no less transparent than the plan condemned in the *Verdin* case.

How much additional the contractor charged for this so-called guaranty and to cover the repairs that might or might not be needed, is as uncertain as it was in *Verdin's* case, and the contract falls within the principle decided in that case.

In *Fehler v. Gosnell*, and *Dickson v. Gleason*, 35 S. W. Rep. 1125, the Kentucky court of appeals on May 26 of this year construed an ordinance for the improvement of Oak street in Louisville. The 14th section of the ordinance provided: "The contractor shall guaranty the faithful performance of his contract according to this ordinance, and the pavement therein specified and the materials composing the same shall be kept in good repair for the period of five years from the completion of the work and its acceptance by the board of public works; and to protect the city as to the character of said work and material, and such repairs as may be needed, the board of public works to be the judge, the contractor shall deposit bonds of the city of Louisville, or of the United States amounting to ten per cent of the original contract price."

By Kentucky statute the city at large was liable for repairs of the streets. It was contended there as here that the stipulation for five years' repairs had the effect to cast the burden on the abutting owners. The court of appeals overruled *Gosnell v. City of Louisville*, 14 Ky. Law Rep. 719, decided by the superior court and cited by the respondent in their brief, and said: "In this case, the contractor is required, not only to guaranty the faithful performance of his contract according to the ordinance, but that 'the pavement therein specified and the materials composing the same shall be kept in good repair for the period of five years,' and further, that, 'to protect the city as to the

character of said work and material, and such repairs as may be needed, the board of public works to be the judge, the contractor shall deposit bonds of the city of Louisville or of the United States amounting to 10 per cent of the original contract price of the entire work, with the city treasurer who shall hold the same * * * to be applied as far as need be in the necessary repairs of said work.' This provision, in our judgment, not only embraces a guaranty of faithful work, but also a provision for repairs rendered necessary by other causes than defects in the contractor's work."

The court also held that the provision as to depositing the bonds caused the bids to be higher than they would have been. That case is on all fours with this in that it contains both the general and special guarantees.

In *McAllister v. Tacoma*, 37 Pac. Rep. 447, the supreme court of Washington held in the absence of any provision in the charter for the payment of repairs the presumption would be that the city would pay them, and that the action of the board in making it a condition that the bidder should give a bond guaranteeing the work for five years was unauthorized and the effect of not only making the abutting property pay for said repairs but to pay for them in advance and accordingly set aside the assessment. To the same effect see, also, *Paving Co. v. Leach*, 34 Pac. Rep. 116.

In view of the unanimity of judicial opinion that the stipulation for repairs for five years does impose an unlawful burden upon the property owner and in every one of them the language used is almost identical with that employed in this contract and was held by all of said courts except Illinois that such words as "guarantees the pavement constructed under these specifications *for five years*, agrees to keep the same in repair during the said period and at the end of said term of five years

turn said pavement over to the city in good order and condition," was an undertaking to repair, regardless of the cause of the defects, we can not reconcile the law upon which we are all agreed with the conclusion reached. Judge BURGESS concurs in my construction of the contract and in the views by me expressed.