THE BARBER-ASPHALT PAVING COMPANY, Appellant, v. MORRIS HEZEL et al., Respondents.

### St. Louis Court of Appeals, June 21, 1898.

1. **Charter of the City of St. Louis:** POWER CONFERRED UPON THE MAYOR AND ASSEMBLY OF THE CITY. The charter confers upon the mayor and assembly the power generally and broadly, by ordinance, to establish, open, vacate, alter, widen, extend, pave or otherwise improve and sprinkle all streets, avenues * * * and provide for the payment of the cost and expenses thereof in the manner in the charter prescribed, and also provide for grading, lighting, cleaning and repairing the same, * * * to construct and keep in repair all bridges, streets, etc.

2. ——: ——: CONTRACTS: CONSTRUCTION OF ORDINANCES OF THE CITY. These grants carry with them the power to make all necessary contracts for grading and paving streets and for keeping them in repair, unless such power is expressly taken away by some other provision of the charter.

3. ——: ——: ——. Nothing in section 27, article 6, takes away this general power; it imposes a limitation upon the mode of its exercise only.

4 ——: ——: ——. The contracting for construction and reconstruction of streets by the city is purely a business transaction, and the taking of a guarantee for the maintenance of such construction or reconstruction by the contractor for a reasonable term of years is the exercise of sound business sagacity, and is to the interest of both the adjacent property owner and the city.

5. ——: ——: ——: REPAIRS. The repairs contemplated by section 27, *supra*, are such repairs as are needed at the time the ordinance is passed, and have no reference whatever to maintenance as a guarantee for perfect work contracted to be done in the future.

6. ——: ——: BOARD OF PUBLIC IMPROVEMENTS: AGENCY: PRESUMPTIONS. The board of public improvements in the discharge of its duties, in reference to street improvements, is as much the agent of the property owner as of the city, and it is its bounden duty to see to it that neither the property owner, nor the city is cheated or wronged by its estimates, or by its lettings and contracts; they are public officials, and in the absence of testimony to the contrary courts will presume that they have acted fairly and honestly.

7. ———: ———. General ordinance number 542 and special ordinance number 17,151 of the city of St. Louis do not violate any of the charter provisions of the city.

*Appeal from the St. Louis City Circuit Court.*—HON.
L. B. VALLIANT, Judge.

REVERSED AND REMANDED; Judge BOND concurring;
Judge BIGGS dissenting.

W. C. SCARRIT and ADIEL SHERWOOD for appellant.

The attention of the court is particularly directed to Gibson v. Owens, 115 Mo. 258, and to Lamar Water Co. v. Lamar, 128 Mo. 188. It will be noted that the only language contained in ordinance 17,151, which authorizes the doing of the work in question relating to or authorizing the maintenance of a constructed street, is the last clause of section 1 of said ordinance and section 6 thereof, the language of both of which being as follows, namely, the last clause of section 1: "And to contract for the maintenance of said constructed street for a period of nine years, commencing one year after the work of reconstruction is completed and accepted." And section 6 being in full as follows: "Sec. 6. The cost of the maintenance shall be paid by the city of St. Louis out of the fund set apart annually for street repairs—reconstructed streets." These provisions of the ordinance as to maintenance can be separated from the provisions in regard to construction, without in any way destroying the force and meaning of the remainder of the ordinance. Therefore, if the court holds that the maintenance provision of the ordinance is void, because no indorsement of the cost of such maintenance was made upon the ordinance, the remainder of the ordinance should be held to be valid. St. Louis v. R. R.,

89 Mo. 44; R. R. v. R'y, 105 Mo. 590; City of Lamar
v. Weidman, 57 Mo. App. 514. In the case first cited,
the court states the doctrine as follows: "If that part
of the ordinance which is here sought to be enforced
is separable from the rest, and contains within itself a
complete enactment, having a distinct purpose which
may be carried into effect without any aid from the
objectionable provisions, then it must stand upon its
own merits, and can suffer no taint from a mere asso-
ciation in the same instrument with such provisions,
however indefendible those may be." The syllabus in
the same case is as follows: "Where the provisions of
an ordinance are separable the whole will not be declared
void because of the unconstitutionality of a part."
In R'y v. R'y, 105 Mo. 590, THOMAS, J., uses this
language: "If that part of the ordinance providing
for a review of the award by the circuit court be void
for want of authority in the municipal assembly to
enact it, the ordinance stands as if that provision had
not been added." In the City of Lamar v. Weidman,
57 Mo. App. 514, SMITH, P. J., uses this language:
"It seems to us that this provision of the ordinance is
not within the grant of power conferred by the statute,
*   *   *   and can not be upheld. But while this is
so, we do not think that it necessarily follows that the
ordinance in its entirety is void. This section is not
so connected with the general scope of the ordinance
as to make it impossible, if it is eliminated to give
effect to what seems to have been the intent of the
city legislature; and therefore, the unobjectionable
parts of it may stand while the invalid section may be
rejected." Same effect Dillon on Mun. Corp. [3 Ed.],
sec. 421. The attention of the court is especially
directed to the opinion of the supreme court in the
suit brought by this plaintiff against Ullman and
others, recently decided by the supreme court and

which is reported at length in 38 S. W. Rep. 458. Upon the question of estoppel, the attention of the court is particularly called to Johnson v. Duer, 115 Mo. 378; Warren v. Barber Co., 115 Mo. 572.

HIRAM J. GROVER for respondent.

BLAND, P. J.—Plaintiff brought suit to recover the amount of a special tax bill assessed against the property of defendants on account of the reconstruction of a portion of Jefferson avenue in the city of St. Louis. The petition is in the ordinary form of petitions in similar suits. The tax bill was filed as an exhibit, and the ordinance number 17,151 under which the work was done was set out in full. An amended answer was filed, which in addition to a plea of the general issue, stated eight special defenses, and contained also a cross-bill, which asked for a cancellation of the special tax bill, filed as an exhibit with the petition. The first of these special defenses in substance is that STATEMENT. ordinance number 17,151, under which the work was done is void, for the reason that the Board of Public Improvements did not specify the material to be used in the work of repair and maintenance, the manner and regulations under which the nine year's maintenance should be regulated, and made no estimate of the cost of such maintenance as is required by section 15, article 6, of the city's charter, and did not prepare and submit to the municipal assembly an estimate of the cost of the work of repair and maintenance proposed by said ordinance as required by section 27, article 6, of the city's charter; that no special appropriation for the cost of repair and maintenance is made by the ordinance as required by section 28, article 6, of the charter.

The second special defense in substance is, that the committee of the municipal assembly, to which the ordinance was referred (if referred) after its second reading, failed and refused to obtain the indorsement of the comptroller of the city; that sufficient unappropriated means stood to the credit of the fund set aside for street repairs—reconstructed streets, to meet the requirements of the ordinance, as required by section 12, article 5, city charter.

The third special defense is in substance, that the ordinance provided for the advertising and letting in one advertisement and one letting for the reconstruction and repair and maintenance for nine years of Jefferson avenue, and that in fact the contract for reconstruction and nine years' maintenance were bid for and awarded to the appellant in one bid and one and the same contract; that such a combination is to the prejudice of the property holders and is unlawful, in that such a contract taxes specially the adjacent property with the cost of repairs and maintenance, which the city under its charter is bound to pay.

The fourth special defense is in substance, that the Board of Public Improvements in recommending and directing the work on Jefferson avenue, acted in pursuance of section 542 of the Revised Ordinances of 1887, in force at the date of the passage of ordinance number 17,151; that said section 542 of Revised Ordinances of 1887 and ordinance number 17,151 are void for the reason that they are in conflict with sections 14, 15, 17, 18, 24, 27 and 28, article 6 of the city charter.

The fifth special defense is in substance, that the Board of Public Improvements arbitrarily fixed the price and rate at fifty cents per square for maintenance, instead of submitting estimates for such work, as required by the city's charter. As a consequence of this

arbitrary ruling of the board, the defendants for a sixth special defense state substantially, that the cost of repairs and maintenance was in part, if not wholly, incorporated in the estimates, bid letting and contracting for reconstruction, and that this excess of charge for reconstruction was taxed against the defendants in the tax bill, whereas it should be paid by the city.

The seventh special defense was stricken out on motion of the plaintiff on the authority of Verdin v. St. Louis, 131 Mo. 26.

The eighth special defense is as follows: "By designating the Barber Asphalt Paving Company as the only bidder for reconstruction, and unlawfully requiring the said work of repair and maintenance, to be let together with the reconstruction, in the same contract, to the same contractor, the Board of Public Improvements, and the Municipal Assembly of the city of St. Louis by adopting said ordinance number 17,151, violated section 27, article 6, of the charter, which provides that contracts for repairs for a period exceeding one year shall be submitted to competitive bidding, and let to the lowest bidder."

By agreement the court tried the case without the aid of a jury, upon facts mostly agreed upon. To make out its case the plaintiff offered the following agreed state of facts:

"The signatures of the president of the Board of Public Improvements of the city of St. Louis and of the comptroller of the city of St. Louis, appearing on the tax bill No. 3170 sued on are genuine. The said tax bill was issued and delivered to and is owned by the plaintiff herein, the Barber Asphalt Paving Company, as alleged in the petition.

"Defendants are the owners of the land described in the petition and tax bill sued on. Demand of payment of tax bills sued on was made by plaintiff of

defendants upon the date stated in the petition. Plaintiff offers in evidence said special tax bill, which is exhibit "A" attached to its petition and rests."

DEFENDANTS' CASE.

"1. Defendants offer in evidence ordinance No. 17,151, together with all indorsements thereon, which ordinance is correctly set out in plaintiff's petition, and the indorsements thereon are as follows:"

Upon the front is the following:

"E. N. R.

"House bill No. 401, Regular Session, 1892–1893. An Ordinance to reconstruct Jefferson avenue from Adam street to Market street. Recommended by the Board of Public Improvements."

*EVIDENCE.*

"First reading, March 7, 1893; second reading, March 10, 1893, referred to the Committee on Public Improvements. March 14, 1893, engrossed, read third time and passed. Enrolled, March 22, 1893; approved March 28, 1893. No. 17,151.

"THOMAS E. BARRETT,
"Clerk House of Delegates."

And upon the inside fold the following indorsements:

"OFFICE OF THE BOARD OF PUBLIC IMPROVEMENTS.

"ST LOUIS, February, 28th, 1893.

"The Board of Public Improvements estimates the cost of the entire work contemplated by the within ordinance to be done at the expense of the city, at one thousand and forty-five dollars, and at the expense of property owners fifteen thousand, five hundred and three dollars.     GEORGE BURNET,

"Attest:     President Board of Public Improvements.

"EMORY S. FOSTER, Secretary."

"COMPTROLLER'S OFFICE, March 11th, 1893.

"I certify that sufficient unappropriated means stand to the credit of the street reconstruction fund to meet the proposed appropriation, say one thousand and forty-five dollars, and to the credit of special tax fund—new work, to meet the proposed appropriation of two hundred and sixty-three dollars.

"JOHN D. STEVENSON,
"Comptroller."

And upon the back the following:

"Petition No. 5162."

And the following made by a rubber stamp in the form of a seal:

"Office President.
"Board Public Improvements.
"February, 28, 1893, St. Louis.

"Ordinance adopted and recommended by the "Board to the Municipal Assembly, February 28, 1893.

"Ayes, 6.                    GEO. BURNET,
"Noes, 0.                    President."

"At the time of the recommendation of said ordinance by the Board of Public Improvements of the city of St. Louis and at the time of its transmission to, and reception by the Municipal Assembly of the city of St. Louis, and during its pendency in said Municipal Assembly prior to its final adoption and approval, said ordinance was not indorsed with the board's estimate, or any estimate of the cost of the maintenance or repair of the street for nine years provided for therein. The said Board of Public Improvements never did from the time of recommending and transmitting said ordinance to the Municipal Assembly, nor during its pendency in said Municipal Assembly, nor at any time whatever prepare and submit to said Municipal Assembly of the city of St. Louis, any estimate of the cost of the work of mainte-

nance or repair of the street for nine years, proposed and provided for in said ordinance; and said ordinance did not and does not contain a specific appropriation for the cost of said maintenance or repair based upon an estimate of such, indorsed by the President of said Board of Public Improvements on said ordinance, for the whole cost of the repair, and maintenance of that portion of Grand avenue embraced in said ordinance.

"2. In the Municipal Assembly of the city of St. Louis the said ordinance No. 17,151 was on its second reading referred to the appropriate committee, but the said committee failed to obtain, and there was not placed on said ordinance at any time, the indorsement of the comptroller of the city of St. Louis to the effect that sufficient unappropriated means stood to the credit of the fund set aside for "street repairs—reconstructed streets"—to meet the requirements of said ordinance and particularly the requirement thereof as to the payment of the cost of maintenance and repair of said street provided for in said ordinance, either for one year or for nine years. While this is true, there were moneys in the city treasury at the time standing to the credit of the fund known as "street repairs—reconstructed streets" out of which the maintenance could be paid annually and was paid every six months commencing eighteen months after the completion of the work of reconstruction. This fund, "street repairs—reconstructed streets," is one provided regularly every year by the annual appropriation bill, known as the general appropriation bill, and is provided upon a recommendation and general estimate by the street commissioner in view of the contracts outstanding and the requirements of his department.

"3 The work of reconstruction and the maintenance of said street for nine years, beginning at the end of the first year after reconstruction, were adver-

tised and bid for and were let and contracted for
together as called for by the advertisement, bidding
and letting number 3483, and the record of the Board
of Public Improvements, at the same time by the
same contract, and each secured by a separate bond;
and were let to and contracted for to be done by
the same contractor.   Said advertisement, bidding and
letting and record are as follows, to wit:''   (Omitted
not important to be set out here).

The tax bill read in evidence was in conformity to
law, duly signed and authenticated.   The defendants
read in evidence as a defense the advertisement to con-
tractors, the bid, of the plaintiff, the letting and the
contract, which is a very elaborate one; so much of it
as is material to be noticed in this opinion is as follows:

"Agreement, made and entered into this twenty-
third day of May, A. D. 189–, by and between The
Barber Asphalt Paving Co., party of the first part, and
the city of St. Louis, party of the second part, wit-
nesseth:

"Whereas, The Board of Public Improvements of
the said city of St Louis, under the provisions of Or-
dinance number 17,151, approved March 28, 1893, and
by virtue of the authority vested in the said board by
the charter and general ordinances of the city, did let
out unto the said Barber Asphalt Paving Company,
the work of reconstructing with best quality of Trini-
dad Lake Asphalt Jefferson avenue, from Adams street
to Market street, by taking up and removing the old
pavement, preparing the roadway, renewing and read-
justing the curbing, laying a roadway pavement, to
consist of a base of hydraulic cement concrete, covered
with a wearing surface composed of a mixture of re-
fined Trinidad Lake Asphalt, heavy petroleum oil, sand
and powdered carbonate of lime, making all proper con-
nections and intersections with other streets and alleys

and to maintain and reconstruct street for a period of nine years, commencing one year after the work of reconstruction is completed and accepted, as by the above mentioned ordinance specified:

"Now, therefore, in consideration of the payments and covenants hereinafter mentioned, to be made and performed by said second party, the said Barber Asphalt Paving Co. hereby covenants and agrees to do the work of reconstruction and maintenance above mentioned in substantial and workmanlike manner in conformity with the plans of such work on file in the office of the street commissioner of the city of St. Louis, and in strict obedience to the directions which may from time to time be given by the said street commissioner, or his duly authorized agents, and in accordance with the following:" * * * "The Barber Asphalt Company, party of the first, part expressly guarantees to maintain at grade and surface in good order the aforesaid work of reconstruction for the full period of nine years, commencing one year after said work of reconstruction is completed and accepted, and binds himself, his heirs and assigns to make all repairs which may from any imperfection in said work or materials become necessary within that time." * * * "The said Barber Asphalt Paving Company party of the first part, expressly guarantees the above work of reconstruction for the full period of one year after its completion, and binds himself, his heirs and assigns for the entire expense of all repairs which may, from any imperfection in the said work or materials, become necessary within that time."

For the maintenance for the nine year period the contract provided that plaintiff should receive fifty cents per square per annum, to be paid by the city on estimates to be made by the proper city officers and

approved by the Board of Public Improvements. It was admitted that but one bid was made for the reconstruction of Jefferson avenue and for its maintenance, and it was admitted that section 542 of the Revised Ordinances of 1887 was in full force at the date of the passage of ordinance number 17,151. The following is a summary of the charter provisions, the ordinances under which the letting, contracting and improvement of Jefferson avenue, between Market and Adams street, were made, as appears from the evidence and agreed statement of facts. Section 27, article 6 of the charter provides:

"The assembly shall have no power directly to contract for any public work or improvement or repairs thereof contemplated by this charter, or to fix the price or rate thereof, but the Board of Public Improvements shall, in all cases, except in cases of necessary repairs requiring prompt attention, prepare and submit to the Assembly estimates of costs of any proposed work, and under direction of the ordinance, shall advertise for bids as provided for purchasers by the commissioners of supplies, and let out said work by contract to the lowest responsible bidder subject to the approval of the council. Any other mode of letting out work shall be held as illegal and void."

Section 18 of article 6 requires "the repairs of all streets" to be paid out of the general revenue of the city, and the paving of all streets to be "charged upon the adjoining property as a special tax," not exceeding the amount of twenty-five per cent of its assessed value."

By section 26 article 3, the mayor and assembly are given the most ample power and control over the streets of the city, and general authority to construct, pave and keep them in repair." General ordinance 542 of the revision of 1887 provides in detail for letting contracts for street construction and for what the

contract shall require.    Among other matters it provides:

"Whenever a street is to be improved, either on the motion of the Board of Public Improvement or on petition of the adjoining property owners, the Board of Public Improvements may submit to the Municipal Assembly a bill for letting in one contract the work of constructing or reconstructing such street and of maintaining it in good condition for a term of years; and after such bill has become a law the Board of Public Improvements shall advertise for proposals including the construction or reconstruction and maintenance under the same regulations as provided for the improvements of streets, but the advertisement shall, in addition to what is prescribed for other street improvements, state the term during which the street is to be maintained in good condition." It requires further: "The contract shall provide that the obligation of the contractor to maintain the streets in good condition shall commence one year after the completion and acceptance of the work of constructing or reconstructing and the contract price shall be paid semiannually out of the city treasury, on the certificate of the street commissioner that the work has been performed in accordance with the contract and specifications."

In canvassing the proposals the lowest bid is required to be ascertained "by taking the aggregate amount of the cost of construction or reconstruction, as the case may be, and the total cost of maintenance, for the term of years designated by the ordinance."

The Board of Public Improvements submitted to the Assembly and that body passed and the mayor approved a special ordinance, number 17,151, for the improvement of Jefferson Avenue between Market and Adams streets.

"Section 1 of this ordinance directs the Board of Public Improvements to cause Jefferson avenue, between Market and Adams streets to be reconstructed with the best quality of Trinidad Lake Asphalt and to contract for the maintenance thereof for a period of nine years commencing one year after the work of reconstruction is completed and accepted.

Section 2 and 3 recite the specifications and are unimportant in this contest. Section 4 provides for a special tax bill for the cost of reconstruction against abutting property. Section 5 makes an appropriation for the cost of reconstruction above twenty-five per cent of the assessed value of the abutting property, while section 6, the last of the ordinance, makes an appropriation in general terms out of a fund set apart for street repairs—"reconstructed streets"—for the cost of maintenance.

The testimony of Robt. E. McMath, president of the Board of Public Improvements, and of Henry Flad, who was the first president of the board, tended to prove that there was no written or unwritten rule of the board fixing any limit to the amount which should be paid contractors for maintenance of streets, constructed or reconstructed with Trinidad asphalt paving, but that it was agreed between members of the board that fifty cents per square of one hundred feet per annum was a fair and adequate compensation for such maintenance, and that no bid exceeding that sum had been accepted, and that this fact that the board would not accept a bid in excess of fifty cents for maintenance was probably known to contractors, as no bid in excess of fifty cents had been received since the agreement. ·

The testimony of Henry R. Kasson and Amos Perkins, skilled experts in laying Trinidad asphaltum pavements tended very strongly to prove a very close and necessary connection between construction or

reconstruction of a roadway with asphaltum pavement and its maintenance; so close indeed is the connection, according to the testimony of these witnesses, that no one but the contractor who laid the pavement could with intelligence bid on its maintenance, for the reason that the mixture to make a durable pavement would necessarily have to be varied according to climatic and traffic conditions, and that each street to be improved by this pavement has to be made the object of special study and investigation to secure a lasting pavement.

When they are all considered together, the ordinances, the advertisement for bids, and the contract in evidence, it clearly appears that a paramount object had in view by the city's official agents was to secure a lasting and enduring pavement on Jefferson avenue, and that the obligation imposed on the contractor to maintain the pavement in perfect condition for a period of ten years under the terms of the contract was intended primarily as security for the completeness and durability of the work of reconstruction. The contract to maintain is therefore a part of and a continuation of the contract to reconstruct; as a whole the contract provides for a complete pavement for a period of ten years and is inseverable and not capable of full performance until the expiration of the time in which it was to continue; it is not a divisible contract providing for two distinct and severable objects—reconstruction and repair; under its terms the plaintiff guaranteed the work for ten years.

The authority of the city to require this guarantee in the reconstruction of a street is called in question. It was said in the Verdin case (131 Mo. 26) by a majority of the supreme court on the facts stated in the petition in that case, that the requirements of section 542, ordinance of 1887, that the contractor should maintain the pavement for a number of years, could

not be distinguished from a contract for repairs within the meaning of section 27, article 6 of the charter; that a contract for repairs is required to be let to the lowest bidder, and that section 542, *supra*, authorizing a contract for construction and maintenance to be let together was in violation of section 27, article 6 of the charter. Since the decision in the Verdin case the supreme court has held that an agreement by a contractor to reconstruct a street and to maintain it at his own cost for a period of five years, was not an agreement to make repairs on a street within the meaning of section 1424, charter of the city of St. Joseph, which provides that "the cost of repairing and keeping in repair the paving and macadamizing of all streets and avenues shall be paid out of the general revenue of the city." Barber Asphalt Co. v. Ullman, 137 Mo. 543. The charter confers upon the mayor and assembly the power generally and broadly, by ordinance, to establish, open, vacate, alter, widen, extend, pave or otherwise improve and sprinkle all streets, avenues * * * and provide for the payment of the cost and expenses thereof in the manner in the charter prescribed, and also provide for grading, lighting, cleaning and repairing the same * * * to construct and keep in repair all bridges, streets, etc. These grants carry with them the power to make all necessary contracts for grading and paving streets and for keeping them in repair, unless such power is expressly taken away by some other provision of the charter. Nothing in section 27, article 6, takes away this general power; it imposes a limitation upon the mode of its exercise only; it requires that "proposed work" (including repairs) shall be let to the lowest bidder, and that estimates of cost of proposed work shall be made by the Board of Public Improvements and submitted to the General Assembly, but it nowhere

prohibits a contract of guarantee of the work to be let; the contracting for construction and reconstruction of streets by the city is purely a business transaction, and the taking of a guarantee for the maintenance of such construction or reconstruction by the contractor for a reasonable term of years is the exercise of sound business sagacity, and is to the interest to both the adjacent property owner and to the city—to the interest of the former in securing him good streets and guaranteeing him against the cost of reconstruction for a long period of years—and to the interest of the latter in that it guarantees it against the cost of keeping in repair badly constructed or reconstructed streets; and where such guarantees are taken with due regard to the obligation of the adjacent property owner to pay for the construction and of the city to pay for repairs, no wiser or more adequate provision could be incorporated in the contract for the purpose of securing good work and lasting roadways. Norse v. City of West Port, 110 Mo. 502. The repairs contemplated by section 27, *supra*, are such repairs as are needed at the time the ordinance is passed, and have no reference whatever to maintenance as a guarantee for perfect work contracted to be done in the future. We think the general powers conferred by the charter authorize the making of the contract for reconstruction and for maintenance as it was made, unless, as contended by defendants—the contract for maintenance shifted from the city, where it rightfully belonged, the cost of repairs to the adjacent property owner. Evidence was heard upon this issue, and it is all against the defendant's contention.

Fladd and Perkins were the only witnesses who testified on this issue, and they both stated that fifty cents per square per annum for maintaining an asphalt pavement for nine years, beginning one year after it is laid, would be fair and adequate compensation, assum-

ing that the pavement was well laid and the work of reconstruction properly done. We can not assume that because reconstruction and maintenance are provided for in the same contract, and because the Board of Public Improvements had agreed on a maximum figure for maintenance, that therefore the adjacent property owner is made to pay in advance for maintenance or repairs by having the cost or repairs anticipated and incorporated in the bid, letting, and contract for reconstruction. Such an assumption would be to impute fraud to both the Board of Public Improvements and to the contractor, to wit, a fraudulent design to defraud the property owner for the purpose of relieving the city in part of its legal burden to repair its streets. The Board of Public Improvements in the discharge of its duties, in reference to street improvements, is as much the agent of the property owner as of the city, and it is its bounden duty to see to it that neither the property owner, nor the city is cheated or wronged by its estimates, or by its lettings and contracts; they are public officials, and in the absence of testimony to the contrary courts will presume that they have acted honestly and fairly, Portis v. Hill, 98 Am. Dec. 481, and in this connection it may be said that the fact that there was but one bid does not invalidate the contract; the Board of Public Improvements had the power to reject the bid if they found it too high, and the fact that they accepted it is presumptive evidence that it was a fair bid, fair to both the city and the adjacent property owners. If it was too high, if exorbitant as averred in the answer, evidence to prove the fact should have been offered; we find no such evidence in the record.

This case is further distinguished from the Verdin case in the fact that it does not appear from the

*BOARD of Public improvements is the agent of the city and the property owner.*

evidence that the bid for reconstruction was higher on account of a maximum bid fixed by the board of public improvements for maintenance than it would have been for perfect work without the bid for maintenance.

We are unable to discover wherein general ordinance number 542 and special ordinance number 17,151 violate any of the charter provisions of the city; on the contrary it seems to us that under the general power conferred by. second subdivision section 26, article 3 of the charter and the authority to pass these ordinances is clearly deducible. Latitude and discretion is by the charter left to the city *Powers conferred on officials.* officials in matters of control over streets and of keeping them in condition for public use, and they are necessarily required to provide by ordinance the details for carrying out the general provisions of the charter. The ordinances in question appear to us to be the result of a wise and judicious exercise of the discretion given by the charter, and if faithfully and honestly observed will vastly benefit both city and property owner. Suppose that it be conceded that the charter prohibits the letting of a contract for both reconstruction and maintenance in one and the same contract, that each must be advertised, bid for, let and contracted separately, how will this help the defendants in this case, in view of the proof that the bid, letting and contract for the reconstruction was not influenced by the bid, letting and contract for maintenance? The invalid part of the ordinances providing for maintenance may be eliminated, and the remaining part of the ordinance providing for reconstruction may stand, St. Louis v. R. R., 89 Mo. 44; R. R. v. R. R., 105 Mo. 590; Lamar v. Weidman, 57 Mo. App. 514; 1 Dillon on Mun. Corp. [4 Ed.], sec. 241; and the provision for main-

tenance may be·eliminated from the contract and the stipulation for reconstruction may be enforced. Neosho Water Co. v. Neosho, 136 Mo. 498; Asphalt Co. v. Ullman, *supra;* Neenan v. Smith, 60 Mo. 292. On the authority of the Ullman case and for the reasons stated herein the judgment is reversed and the cause remanded. Judge BOND concurs; Judge BIGGS absent.

### DISSENTING OPINION BY JUDGE BIGGS.

The facts in this case and·those in the case of Verdin v. St. Louis, 131 Mo. 26, are not materially different. Under the decision in the Verdin case the· judgment ought to be affirmed. It is claimed by the appellant that the testimony of Henry R. Kasson and Amos Perkins establishes, without contradiction, that the pavement in question can be maintained for nine years at the annual cost of fifty cents per square, and that this testimony distinguishes the case at bar as to its facts from the Verdin case and brings it within the ruling of the supreme court in the later case of the Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543. In the Verdin case it was decided that the letting of the work of reconstruction and maintenance in the same contract was in violation of the charter of the city which rendered the contract and the tax bills issued under it void.

In the Ullman case, Judge Barclay, who delivered the opinion of the court, decided that the question of maintenance was not in that case and that this distinguished it from the Verdin case. He states in the opinion that it was not the purpose or intention of the court to overrule. or modify the law as declared in the Verdin case. Hence it can make no difference in the case at bar whether the defendants were or were not substantially prejudiced by the joint letting.

But granting for the argument that the contention of the appellant indicates the true distinction to be drawn between the two decisions referred to, the difficulty is that the statements of Kasson and Perkins were contradicted by the testimony of Flad and Mc-Math. Besides Kasson and Perkins, by their own admissions, disqualified themselves from expressing an opinion on the question of maintenance of a pavement in the city of St. Louis. Hence, on the facts as presented by this record, I regard the decision in the *Verdin case* as the *last controlling* decision, and as the majority opinion in this case is opposed to that decision, I ask that the case be certified to the supreme court.