## ST. LOUIS QUARRY AND CONSTRUCTION COMPANY, Respondent, v. DANIEL M. FROST et al.; MARY HIRSCHBERG et al., Appellants.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Charter of the City of St. Louis:** STREET CONSTRUCTION, EXPENSE OF: RIGHTS OF ABUTTING OWNERS: CITY ORDINANCE AND CONTRACT VOID AS OPPOSED TO CITY CHARTER. Under the provisions of the charter of the city of St. Louis, after a street has been constructed, the expense of keeping it in repair must be born by the city and the whole of the cost of such

St. Louis Quarry and Con. Co. v. Frost.

repairs be charged against the general revenue of the city. The cost of construction or reconstruction is by the same instrument, in the case at bar, charged to the abutting owners; and if the contract and ordinance, requiring the contractor to keep the street in repair for one year after its reconstruction was completed, shifted the burden of keeping the street in repair for one year, from the city to the abutting owners, the ordinance and contract are void as opposed to the charter.

2. ———: ———: ———: COMPETITION MUST BE UNRESTRICTED IN LETTING OF STREET CONSTRUCTION WORK. The charter of the city of St. Louis (section 27, article 6), has for its object the protection of the property-owner in securing untrammeled and unrestricted competition in the letting of street construction work, and any ordinance, that does restrict the letting or by other restrictions increases the cost of the material or labor for doing the work, is obnoxious to the charter.

3. ———: ———: ———. But in the case at bar, the evidence shows that the ordinance did not have the effect either in restricting, bidding or increasing the cost of construction.

4. ———: ———: EIGHT-HOUR LAW NOT AN UNREASONABLE RESTRICTION. An ordinance requiring a contractor to restrict the hours of labor of its employees to eight hours per day is not an unreasonable ordinance.

Appeal from St. Louis City Circuit Court.—*Hon. John O'Neill Ryan,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The petition is in the usual form and is for the recovery of a special taxbill for the reconstruction of a portion of Wash street in the city of St. Louis. The answer set up the following special defenses.

"1. That the contract upon which said special taxbill was issued required that plaintiff should keep said work of reconstruction in repair for the period of one year after com-

pletion and acceptance thereof by said city in accordance with sections 1369, 1370 and 1371, Revised Ordinances of St. Louis referred to in said contract and that plaintiff in making its bid for said work added thereto the estimated cost of such keeping in repair; that by the charter of the city of St. Louis, repairs of all streets and highways of the city of St. Louis should be paid out of the general revenue of said city, and that it was beyond the power of the city of St. Louis or of any of its officers to charge the cost of said repairs upon the abutting property-owners directly or indirectly.

"That the clause in said contract, referred to in plaintiff's petition, which required the plaintiff herein to keep said street, referred to in plaintiff's petition, in repair for one year after the acceptance of the same by the city of St. Louis, imposes or attempts to impose on the defendant's property herein as a special tax for reconstruction, an unusual and unascertainable portion of the expenses properly chargeable to the city of St. Louis for repairs.

"Defendant states, that by reason of said facts, the contract and taxbill are void and of no effect.

"2. That it is provided by charter of said city, that all public work shall be let only after advertisement for bids therefor and the doing therefor let out to the lowest responsible bidder and that any other mode of letting out such work shall be illegal and void; that in the letting out of the work upon which said special taxbill was issued said city notified all who might or should desire to become bidders for the doing of said work, that the lowest responsible bidder to whom said work should be let, should obligate himself not to use any granite mentioned in said ordinance 18737, except it should have been dressed within the territorial limits of the State of Missouri, as required by a certain other ordinance of said city numbered 18960; that such lowest responsible bidder should not be allowed to require of any laborers or employees

in the doing of said work that they should labor more than eight hours a day as required by ordinance 16514 of said city, and that each and both of these ordinances are in con-flict with said charter as to the letting of said work, and lim-ited and restricted competition in bidding for the letting of said work and that such restriction in the bidding increased the cost of said work and made the said taxbill illegal and void.

"The third defense recites that by said charter no such improvement can become chargeable to abutting owners ex-cept under authority of a special ordinance therefor; that before such ordinance may be passed it must have been rec-ommended by the board of public improvements of the city and that no such recommendation can be made without op-portunity given for such owners to remonstrate before said board against such recommendation; that such ordinance, if recommended and passed, shall specify the character, extent, material and the general regulations of the work; that after advertisement for bids the said board shall let said work to the lowest responsible bidder and that no other mode of let-ting shall be legal or valid, and upon contract being entered into for the doing thereof, its faithful performance shall be secured by a bond with sureties, that it is stated that said ordinances 16514 and 18960, above referred to, requiring, re-spectively, that no laborer should be required to work more than eight hours per day and that no granite except such as should have been dressed in Missouri should be used in the doing of said work and that under the provision of said sec-tions 1369 and 1370, the contractor for said work should de-posit $200 to secure the doing of any repairs on the com-pleted and accepted work within one year, that might for any cause be needed and that all who might desire to have said work let or awarded to them were notified by said city, that the requirements of said ordinances and sections would be

enforced and exacted of the lowest responsible bidder to whom the contract for the doing of said work should be awarded; that the said exactions and requirements were illegal and in violation of the charter of said city in that the said ordinances restrict the right of contract between employer and employee, limit the discretion vested in municipal assembly and board of public improvements of said city; that no street is specified whereby abutting owners might have remonstrated against their passage; that said ordinance 18960 was passed subsequent to the special ordinance 18737, authorizing the doing of said work and that they and said sections 1869 and 1870 destroyed and tended to destroy free competition in bidding for the doing of said work and thereby increased the cost thereof."

To the answer a general denial was filed.

Plaintiff offered in evidence the special taxbill duly made out, approved, signed and certified as the law directs and proved demand of payment made on the life tenant, D. M. Frost, who has since died.

Defendant read in evidence the contract under which the work was done, in which the following provision appears:

"All the work of dressing rock, granite or stone required by this contract shall be done within the territorial limits of the State of Missouri, as provided by ordinance No. 18960, approved April 7, 1897. Said ordinance is hereby made part of this contract, and must be observed in all of its provisions."   .   .   .

This provision was not incorporated in the body of the contract but was printed on a slip and pasted to the contract and made a part of it. Ordinance 16514, approved December 22, 1899, was made a part of the contract. This ordinance provided that the men, persons or laborers employed by the contractors should not be required to work more than eight hours per day and for a violation of its provisions the

contractor was made to forfeit his contract and to suffer the penalties. The contract contained these further provisions:

"It is further expressly agreed between the parties hereto that this contract is made subject to the conditions and stipulations which follow: . . . . 12. The said St. Louis Quarry & Construction Company, party of the first part, expressly guarantees the above work for the full period of one year after its completion, and binds himself, his heirs and assigns for the entire expense of all repairs which may, from any imperfection in the said work or materials, become necessary within that time.

"13. And it is hereby agreed that the sum of two hundred dollars, which the party of the first part has paid into the treasury before executing this contract in accordance with section 1369, article 8, chapter 33, of the Revised Ordinances of 1892, be used as a special fund for making repairs in the manner *hereinafter* provided. And if, at any time within twelve months after the completion and acceptance of the work herein contracted for, the said work shall, in the judgment of the street commissioner, require to be repaired, the said street commissioner shall notify the said first party to make the repairs required. And if said first party shall neglect to make such repairs within three days from the date of the service of such notice, then the street commissioner shall have the right to cause such repairs to be made in such manner as he shall deem best, and the whole cost thereof, both for labor and materials, shall be paid out of the special fund before mentioned. And this special fund shall be kept up to the full amount of two hundred dollars, and the remainder finally repaid in the manner set forth in sections 1370 and 1371, article 8, chapter 33, of the Revised Ordinances of 1892."

The contract is dated May 27, 1897.

Defendant read in evidence ordinance No. 18960, ap-

proved April 7, 1897.   This ordinance required that all con-
tracts thereafter entered into should provide that the dress-
ing of dressed rock, granite or stone required for use in such
contract shall be done in the territorial limits of the State
of Missouri.

Defendants then read in evidence section 1369 of article
8, chapter 33, Revised Ordinances of the city of St. Louis,
of 1892, which provides "that before a contract awarded by
the board of public improvements for any work to be paid
for by special tax is executed, the bidder to whom the award
has been made shall be required to pay into the treasury the
sum of $200 as a specific fund, to be used to defray expenses
of necessary repairs, if the contractor shall be liable in his
contract, and which repairs the commissioner under whose
charge the work is done shall order made by reason of the
contractor's failure to make the repairs himself" and section
1370 providing "that when any part of the fund has been
used for the purposes mentioned, the contractor shall bring
the fund up again to the required amount, and until he has
done so no new contract for special tax work shall be awarded
him, nor shall any special taxbills be delivered to him."

"Defendants also read in evidence ordinance 18737,
under which the contract was let and under authority of which
the taxbill purports to be issued, and ordinance 16514, pro-
viding as set out in said contract, said last ordinance being
known as the "eight-hour ordinance."

The oral evidence offered by both parties tended to prove
that all the paving, granite rocks used by contractors in St.
Louis came from Missouri; that the granite curbing stone
came from the State of Georgia, and usually came dressed;
that the freight on dressed and undressed stone was by weight
and that the freight on a dressed stone would be about ten
per cent less than on the same stone undressed; that stone
brought to St. Louis dressed, frequently had to be recut and

some of it rejected because it did not come up to the specifications; that stone dressed during the period the reconstruction work was done was cheaper in' St. Louis than elsewhere on account of the labor conditions then existing here and that the price of street work was not increased at that period by reason of the ordinance requiring the stone to be dressed in the territorial limits of Missouri; that all contractors for' city street work kept two hundred dollars on deposit with the city and that the deposit had no influence whatever on the letting of contracts for street work, and that the eight-hour ordinance was not much observed by the contractors; and that their laborers were paid by the hour and the stone cutters and pavers by the square.

The court declared the law as follows:

"1.   The court declares the law to be, that if it shall find, that the contract, upon which the special taxbill sued upon was issued, was for the doing of work by virtue of ordinance 18737, offered in evidence, and that at the time said ordinance became a law, bidders for the letting of the work thereunder had a right to use granite for the curbing specified therein without respect to its being dressed within the territorial limits of the State of Missouri or elsewhere, then no ordinance subsequently enacted by the city of St. Louis or .its municipal assembly restricting the use of granite in said work to such as should have been dressed within said limits, could be made a condition to the letting of said work.

"And the court further declares the law to be, that if it shall find, that bidders for the doing of said work, or proposed bidders therefor, were notified, that in the doing of said work it would be required that no granite for curbing should be used, except such as should have been dressed within the territorial limits of the State of Missouri, *and the effect was to restrict competition and to increase the cost of the work,* then there was restriction in the letting of said work in violation

of the charter of the city of St. Louis and thereby the cost of said work was increased and the contract upon such was illegal and the special taxbill issued thereon was null and void.

"2. The court declares the law to be, that repairs of all streets and highways in the city of St. Louis shall be paid for out of the general revenue of said city and shall not be a charge on abutting owners, and that it is not lawful for said city to exact of any bidder for the doing of any work of reconstruction of a street under an ordinance for such reconstruction, that he shall take into consideration the doing of any repairs *defined by charter to be paid out of general revenue upon* the completed work, such as within twelve months thereafter, its street commissioner might require, and the making of a deposit of money in the sum of $200 to secure the payment of such repairs, and if the court finds that in the bidding for and the letting of the work in the contract, offered in evidence, provided to be done, bidders were notified that the contractor for the doing of said work would be required to make such repairs and to deposit said sum, the court declares the law to be that competition in said letting and the bidding upon the same was restricted in violation of the charter of said city, and said contract and the special taxbill issued thereon was illegal, null and void."

The court, sitting as a jury, found the issues for the plaintiff and entered a judgment for the amount of the taxbill with interest from the date of the beginning of the suit. A timely motion for new trial was filed, which was by the court overruled, and the defendant appealed.

*Needham C. Collier* for appellants.

(1) Section 27 of article 6, of the charter of the city of St. Louis, "unquestionably intended to secure unrestricted competition among bidders" for the work in question, and

made any other "mode of letting illegal and void." St. Louis Quarry and Construction Company v. Von Versen, 81 Mo. App. 519. (2) There was a departure in the letting from "the direction of the ordinance" authorizing the work, in that the obtaining of the material prescribed was restricted to such as should have been dressed in a certain locality without any prescribing of a standard therefor. Fishburn v. City of Chicago, 171 Ill. 343; Reddersheimer v. Flower, 52 La. Am., 28 So. 299. (3) Ordinance No. 18960, the dressed-stone ordinance, being passed subsequent to the ordinance authorizing the work, had no applicability to the letting in question. Endlich on Interp. Statutes, secs. 271 and 272; Sutherland on Stat. Cons., sec. 464, and citations; Charter, secs. 14 and 15, art. 6. (4) Ordinances 18960 and 16514 are void, as in violation of sections 4 and 30, of article 2 of the Constitution of Missouri, and of fourteenth amendment of Federal Constitution. State v. Julow, 129 Mo. 163; State v. Loomis, 115 Mo. 319; State v. Goodwill, 33 W. Va. 179; In re House Bill No. 203, 21 Colo. 27; Ramsey v. People, 142 Ill. 380.

*David Goldsmith* and *Sale & Sale* for respondent.

In St. Louis, etc., Co. v. Von Versen, 81 Mo. App. 519, this court held that the ordinance in regard to the dressing of rock, referred to in our statement, invalidated taxbills issued under contracts which embodied it, when the effect of its insertion was to prevent competition and increase the price of the work. That decision has been followed in the trial and decision of the case at bar, and, accordingly, the defendants can only hope for a reversal of the judgment by establishing a new doctrine—one which goes far beyond that decision. This they have undertaken to do; and they advance the claim that it must be conclusively presumed as matter of law that the ordinance, by restricting competition, did advance

prices. This would be a rather violent presumption. It is asking the court to conclusively presume a fact to exist which the evidence conclusively established did not exist. The vice of the argument, furthermore, is that the defendants assume their premises. Where is the evidence, or what warrants the assertion, that the ordinance did restrict competition? We say that it did not, and indeed that it could not do so. If the Von Versen case is subject to criticism it is because it favors the appellants too much, not because it favors them too little. To us it seems to interfere with the discretion vested exclusively in the municipal authorities to prescribe the materials and specifications for public work. To say that a letting which limits competition and increases prices is on that account necessarily illegal, is to our mind to prohibit the designation by those authorities of any material which is covered by a patent or is the subject of a monopoly, or whose supply is controlled by but few persons, and, therefore, to antagonize the decisions of the Supreme Court of this State in Barbar Asphalt Co., v. Hunt, 100 Mo. 22, and Verdin v. City of St. Louis, 131 Mo. 26. We say this not from any desire to criticise or comment upon the decision in the Von Versen case, that being wholly unnecessary for the purposes of this appeal, but only in support of our contention that that case goes to the very verge of, if not beyond, the law.

BLAND, P. J.—I. Under the provisions of the charter of the city of St. Louis, after a street has been constructed, the expense of keeping it in repair must be borne by the city and the whole of the cost of such repairs be charged against the general revenue of the city. The cost of construction or reconstruction is by the same instrument charged to the abutting property-owners; if, therefore, the contract and ordinance, requiring the contractor to keep the street in repair

for one year after its reconstruction was completed, shifted the burden of keeping the street in repair for one year, from the city to the abutting property-owners, the ordinance and contract are void as opposed to the charter. In Asphalt Paving Company v. Ullman, 137 Mo. l. c. 566, speaking of a contract made under a like charter and ordinance the Supreme Court, through BARCLAY, J., said, "The 'guarantee' of the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property, further than would be justly payable for a lasting pavement. The terms for keeping the agreed work in repair, free of cost, is no longer than the reasonable period such a work should last, if properly done at the outset. It certainly is proper for the city to require of the contractor for such improvements a sound and durable piece of finished work. The agreement to maintain the work free of cost for five years is (so far as this record shows) nothing more than a guaranty that the work shall be of that character." This ruling was approved and followed in Bank v. Woesten, 147 Mo. 467; Barber Asphalt Paving Co. v. Hezel, 76 Mo. App. 135; s. c., 155 Mo. 391.

These authorities effectually dispose of appellant's first special defense.

II.   Ordinance No. 18960, passed after the passage of the special ordinance providing for the reconstruction of Carr street, should not have been incorporated in the contract, but as it was made a part of the contract and the contractor observed its provisions, it was material to inquire, on the trial, whether or not its requirements, that all the stone used should be dressed in the territorial limits of the State of Missouri, tended to restrict competition in the letting of the work or to increase the cost of the work. There is no evidence in the record that the letting of the work was influenced by the ordinance or that any contractor did not bid who would have bid had there been no such ordinance. In respect to the cost

of the work, the evidence tends to show, and the court found, that it was not increased for the reason that the stone was cut in the territorial limits of this State.

The charter (section 27, article 6) has for its object the protection of the property-owner in securing untrammeled and unrestricted competition in the letting of street construction work, and any ordinance, that does restrict the letting or by other restrictions increases the cost of the material or labor for doing the work, is obnoxious to the charter. In St. Louis Quarry & Construction Co. v. Von Versen, 81 Mo. App. 519, this very ordinance was condemned because the evidence showed that in that case the requirement of the ordinance, that the stone should be cut in the territorial limits of the State of Missouri, did increase the cost of the work. The same result was followed in this case but for the fact that the evidence shows that the ordinance had no such effect either in restricting bidding or increasing the cost of the construction.

It is hardly competent for a court, as a matter of law, as appellant insists should be done, to pronounce void every ordinance that enters into a contract for this character of work because it contains restrictions on the contractor in respect to the class or quality of the material to be used, or as to the manner of its preparation for use, or the skill to be employed in its preparation and use, or as to the territory from which it is to be drawn, or in which it is to be prepared, provided the territory is broad enough not to restrict competition. For, while such restrictions may appear to prevent competition, the facts may show that they have no such effect, but on the contrary that the restrictions in the particular case tended to cheapen the work rather than to increase its cost and to stimulate rather than to restrict competition.

Seemingly ordinance No. 18960 conflicts with the char-

St. Louis Quarry and Con. Co. v. Frost.

ter, but as to this particular piece of work, under the evidence and finding of the court, there was no conflict. It had no influence on the letting and did not increase the cost of the work. The appellants were not injured by it and it would be highly unjust to relieve them of their charter obligation to pay their just proportion of the cost of the work simply because ordinance No. 18960 was incorporated in the contract when the work cost them no more than if it had been left out.

III. The depositing of the two hundred dollars by the contractor was but an additional security for the quality of the work. It was a safe and reasonable provision, and under the evidence did not in the least increase the cost of the work.

IV. The ordinance requiring the contractor to restrict the hours of labor of its employees to eight hours per day, is not an unreasonable ordinance, on the contrary it is in accord with the law of the State (sec. 8136, R. S. 1899), with enlightened sentiment, and the trend of modern legislation elsewhere. That it has no influence whatever on the cost of the work is shown by the fact that in this character of work laborers are paid by the hour, and stone cutters and pavers by the square.

The declarations of law given by the court were as favorable to appellant as they should have been. We discover no reversible error in the record. The judgment seems to be for the right party and is affirmed. Judges *Goode* and *Barclay* concur.