# Williamsport, Appellant, *v.* Hughes.

*Road law— Original paving—Repairs—Covenants as to repairs in paving contract.*

Under the Act of May 23, 1889, P. L. 323, the municipal authorities have the power to enter into a contract for the original paving of a street, and they are vested with a discretion to determine the manner in which the work shall be done, and they may require that covenants shall be incorporated into the agreement for the maintenance of the pavement in good condition during a reasonable period.

If it is established by evidence that the nominal price of the pavement includes compensation to the contractor for a covenant to make repairs not chargeable to the property, and the price paid for original construction is to that extent excessive, a property owner may have the claim against him reduced by the amount of his share of the excess. This does not, however, invalidate the lien as a whole.

It is the duty of municipal officers when contracting for a pavement, whether the cost is to be paid by the city or is to be assessed against the owners of abutting land, to provide for a substantial and durable improvement. They have the power to throw about the contract such safeguards as will insure complete performance and skillful as well as honest work. If the guaranty provision of such a contract involves no extra cost, above what it would have been if the work had at first been executed according to the contract, then it must be held to be a contract of guaranty and not one for repairs. The construction of a street pavement and its maintenance for a reasonable term of years may be included in the same contract where the object is to obtain a better quality of construction.

An ordinance for paving provided as follows: " The contractor shall be required to enter into an agreement with the city to make all necessary repairs for property owners and others who are compelled to open said pavement, at the original contract price per square yard, whether such repairs at a given point amount to a fraction of a square yard or more. The contractor shall erect, keep and maintain in the city a plant embracing the necessary machinery and materials by means of which repairs can be made after the expiration of seven years' guaranty aforesaid, at price above named; or, if at the expiration of the seven years the plant is removed or destroyed, the contractor shall give, assign and transfer to the city the absolute right to use in the city their formulas and machinery for

such necessary repairs, and to furnish to the city at reasonable prices such materials as must of necessity be purchased from said contractor to insure a perfect repair." *Held*, that the covenants required were reasonable, and not such as to which a property owner could make reasonable objection.

Argued Feb. 14, 1902. Appeal, No. 11, Feb. T., 1902, by plaintiff, from judgment of C. P. Lycoming Co., Dec. T., 1899, No. 129, on verdict for defendants on case tried by court without a jury in suit of City of Williamsport v. Nelson A. Hughes and the Savings Institution of the City of Williamsport. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Scire facias sur municipal lien for paving.

Trial by the court without a jury under the act of April 22, 1874. Before ARCHBALD, P. J., specially presiding.

The court found the following facts and conclusions of law.

1. On the    day of April, 1893, a petition was presented to the councils of the city of Williamsport praying for the paving of West Third street, between West and Park streets, in the said city. This petition was signed by a majority in number of the owners of property abutting on the part of the street to be paved, and among others by Nelson A. Hughes, the defendant. The prayer of the petition was that the said West Third street, between West and Park streets, should be paved with Trinidad sheet asphalt, to be laid in the best possible manner on a foundation of hydraulic cement concrete not less than six inches in depth, with a wearing surface of two and one half inches, the city to pay the cost of paving street and alley intersections and the frontage of nonassessable property, and the property owners to pay the balance in proportion to the feet front of their respective properties on said street, less the portion to be paved by the Williamsport Passenger Railway Company, the same to be paid at the option of the said property owners in ten annual installments, if desired.

2. In pursuance of the petition a resolution was passed by the councils May 12, 1893, deciding to pave the street as prayed for, five days' notice of which was duly given by publication in two newspapers of the city, as required by law.

3. Following this, on August 5, 1893, an ordinance was duly passed authorizing the pavement of the street in the

manner suggested, and providing for the issuing of improvement bonds based on assessments therefor. A copy of the ordinance, marked " Exhibit A," is attached to this report and made a part of it.

4. In pursuance of the ordinance, after due advertisement for bids, the bid of the Sicilian Asphalt Paving Company was accepted, and a contract executed September 5, 1893, between the said paving company and the city of Williamsport for the laying of the pavement, the company giving bonds in $20,000, for the faithful performance of their contract. This contract, marked " Exhibit B," is attached to this report and made a part of it.

5. In the summer of 1894; the pavement was laid by the paving company, the section in front of the defendant's property being completed on July 16. It was laid in conformity with the ordinance and contract with the exception that there was a slight deficiency of one fourth to one half inch in the thickness of the wearing surface in some places, on account of which a deduction of five per cent was insisted upon and agreed to by the company, after which the work was accepted by the city authorities.

6. On September 22, 1894, after due notice to property owners by publication three times in two daily newspapers in the city of Williamsport, and written notices left on the premises, the city engineer proceeded to make the assessments to pay for the pavement. These were made according to the foot-front rule and at the rate fixed by the contract, $3.00 per square yard, less the deduction of five per cent for insufficiency already referred to, and excluding street and public alley intersections, and the frontage of nonassessable properties, as well as the part of the street to be paved by the street railway as provided by the ordinance. The property of the defendant, Nelson A. Hughes, is situated on the north side of West Third street, between Walnut and Park, and has a frontage of forty-six feet and nine inches thereon. The assessment against this property at the rates mentioned was $337.85, less $16.09 for the five per cent deduction, making $321.76, the amount for which the lien was filed.

7. On February 8, 1895, in pursuance of the foregoing facts, a municipal lien was filed in this court against the property of

the defendant, Nelson A. Hughes, on West Third street aforesaid, for $321.76, with a penalty for nonpayment of $16.09 and interest from October 1, 1894, such assessment being made payable in ten annual installments, with interest. Upon this lien a sci. fa. was issued September 22, 1899, to No. 129, December term, 1899, which was duly served on the defendant and to which he appeared, and this is the case now on trial.

8. The defendant has made two payments on account of the assessment against him, one of $41.83, April 4, 1895, and another of $59.03, on September 4, 1896. The amount now due, if the assessment is valid, is $257.42, with interest to date, $78.35, and penalties, $12.87, making the total sum due at the time of the trial $348.64.

## CONCLUSIONS OF LAW.

1. The cost of paving a city street may be imposed by local assessment on the property along the line of it to the extent of the benefit conferred. But the cost of keeping such pavement in repair after it is once laid must be borne by the city at large.

2. The defendant, with others, having petitioned for the pavement, and suggested that the cost should be assessed against their properties according to their foot frontage, is estopped from inserting the invalidity of the assessment made against his property because of its having been made in accordance with that rule.

3. He is not estopped, however, from contesting its validity on the ground, if that be the fact, that it has been made to include other things than the cost of the pavement or improvement, for instance, the keeping of it in repair for a term of years, for which he would not be liable; and the mere fact that the assessment was made by the city engineer and the highway committee, either or both, after notice, does not affect the right of the defendant to contest it on the ground that it does.

4. The ordinance in pursuance of which his improvement was made having provided as follows, viz:

"Section 11. That the person to whom the contract is awarded shall be required at his own cost to keep the pavement in good order and repair during the period of seven years

from date of completion, and during said period repair and make good at his own expense, and without any expense to the said property holders, all defects in said pavement due to its proper use as a public highway; provided, however, that this guarantee of repairs shall not apply to any openings made in said pavement for any purpose whatsoever, nor to any settlement of the pavement due to the settling of trenches, the back filling of which shall be done by other parties than the contractor. That the said contractor shall, before any money is paid to him under the terms of his contract, enter into and execute a bond in the sum of $20,000, with two sufficient sureties to be approved by councils, conditioned that the contractor will keep said pavement in good order and repair during the period aforesaid, to the satisfaction of the committee of highways and sewers.

"Section 12. The contractor shall be required to enter into an agreement with the city to make all necessary repairs for property owners and others who are compelled to open said pavement, at the original contract price per square yard, viz, two dollars and eighty cents, whether such repairs at a given point amount to a fraction of a square yard or more.

"Section 13. The contractor shall erect, keep and maintain in the city of Williamsport a plant embracing the necessary machinery and materials by means of which repairs can be made after the expiration of the seven years' guaranty aforesaid, at price above mentioned; or, if at the expiration of the seven years the said plant is removed or destroyed, the contractor shall give, assign and transfer to the city of Williamsport the absolute right to use in the city of Williamsport their formulas and machinery for such necessary repairs, and to furnish to the city at reasonable prices such materials as must of necessity be purchased from said contractor to insure perfect repair."

And the Sicilian Asphalt Paving Company, the successful bidder and contractor, having agreed thereto and given bond to comply therewith, this imposed on the property of the defendant and others, without warrant of law, not only the cost of the pavement but the repair of it for the period named, if not also that of keeping up the necessary plant and machinery for doing so.

5. The extra undertaking required of the contractors by section 11 was something more than a guaranty as to the high character of the pavement to be laid; it was an express agreement to keep it in repair and make good the defects arising from its proper use as a public highway.

6. The assessment in this case is invalid and cannot be enforced.

7. The defendant, Nelson A. Hughes, is not estopped by his payment of a part of it, nor by any other circumstances which have been shown, from denying its validity and resisting the collection of the balance out of his property.

8. Neither is he concluded from making the defense which he now makes, by the fact that the assessment was made by the city engineer and the highway committee, both or either of them, after notice.

9. Judgment should be entered for the defendant, with costs.

*Error assigned* was the judgment of the court.

*John G. Reading*, of *Reading & Allen*, and *John J. Reardon*, city solicitor, for appellant.—The provision contained in the city ordinance relating to the maintenance of the street for a period of years, is but a warranty for the faithful performance of the work according to proper specifications: Pepper v. Phila., 114 Pa. 96; Phila. v. Wistar, 35 Pa. 427; Wilson v. Trenton, 44 L. R. A. 540; Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543 (38 S. W. Repr. 458); Osburn v. Lyons City, 104 Iowa, 160 (73 N. W. Repr. 650); Schenectady v. Union College, 66 Hun, 179 (21 N. Y. Supp. 147); Cole v. People, 161 Ill. 16 (43 N. E. Repr. 607); Leake v. Phila., 10 Pa. C. C. Rep. 268.

The defendant can defend át most only against the alleged excess of the cost of maintenance and the burden of showing such excess is upon him: Watson v. Phila., 93 Pa. 111; Pepper v. Phila., 114 Pa. 96; Erie City v. Butler, 120 Pa. 374; Leake v. Phila., 10 Pa. C. C. Rep. 268.

The defendant is estopped from setting up the defense that the ordinance and the agreement entered into in pursuance thereof are invalid: Bidwell v. Pittsburg, 85 Pa. 412; Mc-

Knight v. Pittsburg, 91 Pa. 273 ; Ferson's App., 96 Pa. 140 ; Pepper v. Phila., 114 Pa. 96 ; Michener v. Phila., 118 Pa. 535 ; Harrisburg v. Baptist, 156 Pa. 526 ; Dewhurst v. Allegheny, 95 Pa. 437 ; Sewickley M. E. Church's App., 165 Pa. 475 ; Beaver Borough v. Davidson, 9 Pa. Superior Ct. 159 ; Erie v. Bier, 10 Pa. Superior Ct. 381 ; Pittsburg v. MacConnell, 130 Pa. 463.

*C. Larue Munson* and *S. T. McCormick*, with them *Addison Candor, H. C. McCormick, Ames & Hammond, J. A. & W. P. Beeber, J. C. & H. R. Hill, C. E. Sprout, W. E. Ritter, James B. Krause, J. T. Fredericks* and *H. W. Watson*, for appellees.— The inclusion within the ordinance and contract of a requirement to keep the pavement in repair and to maintain it, as well as to erect and maintain an asphalt plant, threw an unlawful burden on the defendant : People v. Maher, 56 Hun, 81 (9 N. Y. Supp. 94) ; Boyd v. Milwaukee, 92 Wis. 456 (66 N. W. Repr. 603) ; Brown v. Jenks, 98 Cal. 10 (32 Pac. Repr. 701) ; Portland v. Bituminous Paving Co., 33 Ore. 307 (52 Pac. Repr. 28) ; Verdin v. St. Louis, 131 Mo. 26 (33 S. W. Repr. 480) ; Fehler v. Gosnell, 99 Ky. 380 (35 S. W. Repr. 1125). A still later case is that of Alameda Macadamizing Co. v. Pringle, 130 Cal. 226 (62 Pac. Repr. 394).

OPINION BY W. D. PORTER, J., November 19, 1902 :

This was a scire facias sur municipal lien for paving. The parties, by an agreement in writing filed of record, dispensed with a trial by jury, and the case was tried by the court below, in accordance with the provisions of the act of April 22, 1874. The plaintiff proved that the defendant and others, being a majority in number of the owners of property abutting on the part of the street to be paved, had presented a petition to the councils of the city of Williamsport, praying : " That West Third street, between West and Park streets, should be paved with Trinidad sheet asphalt, to be laid in the best possible manner on a foundation of hydraulic cement concrete, not less than six inches in depth, with a wearing surface of two and one half inches, the city to pay the cost of paving street and alley intersections and the frontage of nonassessable property, and the property owners to pay the balance in proportion to

the feet front of their respective properties on said street." In pursuance of the petition a resolution was passed by the councils on May 12, 1893, deciding to pave the street as prayed for, and notice of the same was given by publication as required by law. An ordinance was duly passed, on August 5, 1893, authorizing the paving of the street in the manner suggested and providing for the issuing of improvement bonds based on assessments therefor. After due advertisement for bids, the bid of the Sicilian Asphalt Paving Company was accepted, and a contract was duly executed on September 5, 1893, in accordance with the provisions of the ordinance, between the said paving company and the city for the laying of the pavement, the company giving bonds in $20,000 for the faithful performance of their contract. All the provisions of the various acts of assembly and ordinances of the city, with regard to the passage of ordinances and letting of contracts of this character, were fully complied with and the contract was formally executed and certified as required by law. The pavement was laid in the summer of 1894, and the city proved and the learned judge of the court below has found as a fact that the work was done in substantial conformity with the ordinance and contract. On September 22, 1894, after due notice to property owners, the city engineer proceeded to make the assessments according to the foot-front rule. The assessment against the property of the defendant was $321.76, the amount for which the lien was filed. The defendant made two payments on account of the assessment against him, one of $43.83, on April 4, 1895, and another of $59.03, on September 4, 1896. The amount now due if the assessment is valid, is $257.42, with interest from September 1, 1896, and a penalty of five per cent, amounting to $12,87. The right of the city to recover is unquestionable, unless by the provisions of the ordinance and the contract entered into in pursuance thereof a burden was imposed on the property of the defendant not authorized by law. The special provisions of the ordinance which the defendant contends made the whole assessment invalid are found in the following material parts of the 11th, 12th and 13th sections, viz : " Section 11. That the person to whom the contract is awarded shall be required at his own cost to keep the pavement in good order and repair during the period of seven years from date of com-

pletion, and during said period repair and make good at his own expense, and without any expense to said property holders, all defects in said pavement due to its proper use as a public highway. Section 12. The contractor shall be required to enter into an agreement with the city to make all necessary repairs for property owners and others who are compelled to open said pavement, at the original contract price per square yard, whether such repairs at a given point amount to a fraction of a square yard or more. Section 13. The contractor shall erect, keep and maintain in the city of Williamsport a plant embracing the necessary machinery and materials by means of which repairs can be made after the expiration of seven years' guaranty aforesaid, at price above named; or, if at the expiration of the seven years the plant is removed or destroyed, the contractor shall give, assign and transfer to the city of Williamsport the absolute right to use in the city of Williamsport their formulas and machinery for such necessary repairs, and to furnish to the city at reasonable prices such materials as must of necesssity be purchased from said contractor to insure perfect repair."

The learned judge before whom the cause was tried in the court below was of opinion that these provisions of the ordinance imposed upon property owners not only the original cost of the pavement but the expense of keeping it in repair for the period named, that the inclusion of a covenant for repairs in the contract for the original construction of the pavement rendered the whole assessment invalid, and judgment was, in accordance with this opinion, entered in favor of the defendant.

That money expended by a municipality for the ordinary repairs of its streets, cannot be assessed against abutting property, is too well settled in Pennsylvania to require citation of authority. The defendant having failed to offer any testimony in the court below, we must determine from the provisions of the ordinance and the contract, alone, whether this assessment does include any amount paid by the city upon account of future repairs. It has been argued that the 13th section of the ordinance requires the contractor to maintain a plant in the city of Williamsport, for the purpose of making repairs after the expiration of seven years, but we do not so read that section. It gives the contractor the option to either maintain in

the city of Williamsport the necessary machinery and materials by means of which repairs can be made, at the price mentioned, or, if he fails to do so, he must give, assign and transfer to the city of Williamsport the absolute right to use in the city of Williamsport the formulas and machinery for such necessary repairs, and to furnish to the city at reasonable prices, such material as must of necessity be purchased from said contractor to insure perfect repair. The contractor could make the repairs himself as long as it was profitable to make them at the price stated; when it became unprofitable, he was only required to permit the city to use the formulas and the kind of machinery necessary to make the part of the street repaired uniform with the entire structure, and to sell to the city at reasonable prices such material as must of necessity be procured from that particular contractor, and could not be procured from any other source. The defendant and his associates having, as they had a right to do under the provisions of the act of 1889, selected for a pavement a substance which could only be procured from a distant island under the dominion of a foreign power, there was no impropriety in the municipal authorities protecting the right of the city to make future repairs by a covenant that the contractor would permit them to use the proper combination of materials and suitable machinery for making the repairs, and that he would sell to the city at reasonable prices such material as he had for sale which could not be procured elsewhere. It certainly cannot be decided as matter of law that this section of the ordinance increased the price paid for the pavement. The repairs covered by the 12th section of the ordinance are such as are, prima facie, to be paid for by the abutting owners. An abutting owner has the right to open the street for the purpose of making sewer, gas and water connections, but this right is subject to regulation by the city. The duty is upon the owner to restore the pavement which he has injured, but it is within the power of the city to determine how this shall be done. If property owners were permitted to do the repaving, or procure irresponsible contractors to do so, a costly improvement might soon be ruined. The city may itself do the work and collect the cost from the owner. The covenant required by the 12th section of the ordinance was in the interest of the owner

of abutting property, in that it protected them against extortion when they came to make, repair or renew the connections of their property with the pipes under the street. The covenant was one which the city had power to make, if in the judgment of the authorities it was necessary to protect the improvement, and nothing here appears which would justify us in holding that the incorporation of such a covenant in this contract involved an abuse of discretion.

The covenant upon which the learned judge of the court below mainly based his decision was that provided for in the 11th section of the ordinance. The first clause of the opening sentence of the section would seem to require the contractor to keep the pavement in repair, during the period of seven years, without regard to the cause from which the necessity for repair arose, but this is to be construed in connection with what follows. The succeeding clause of the sentence makes clear what the contractor was required to do, viz : " during said period repair and make good at his own expense, and without any expense to the said property holders, all defects in said pavement due to its proper use as a public highway." The character of this covenant is to be determined from its effect. Had the contractor been required to enter into a guaranty that the pavement would be so durable that during the period of seven years no defects due to the proper use of the street as a public highway should be developed, the measure of damages for breach of that covenant would have been the cost of repairing such defects. The effect of the covenant incorporated in the ordinance is to render the contractor liable for the same thing, in the same manner and to the same extent. The language used is not that of a technical guaranty. The ordinance may have been drawn by a councilman, who, acting without legal advice, used language which, while not in form a guaranty, secured for the property owners and the city exactly what a formal covenant of guaranty would have yielded, and nothing more. In view of the fact that the subject-matter of this contract was the original construction of a pavement, which the defendant and his associates had petitioned the city to cause to be " laid in the best possible manner," and as this covenant can yield no fruit which a formal guaranty of the durability of the pavement would not have borne, we must hold it to be a covenant

intended to insure proper original construction and not an independent covenant for repairs. It is the duty of municipal officers when contracting for a pavement, whether the cost is to be paid by the city or is to be assessed against the owners of abutting land, to provide for a substantial and durable improvement. They have the power to throw about the contract such safeguards as will insure complete performance and skilful as well as honest work. If the guaranty provision of such a contract involves no extra cost, above what it would have been if the work had at first been executed according to the contract, then it must be held to be a contract of guaranty and not one for repairs. The construction of a street pavement and its maintenance for a reasonable term of years may be included in the same contract where the object is to obtain a better quality of construction: Shank v. Smith, 55 L. R. A. 564; Robertson v. Omaha, 44 L. R. A. 534; Barber Asphalt Paving Company v. Ullman, 137 Mo. 543 (38 S. W. Repr. 458); Seaboard National Bank v. Woesten, 147 Mo. 467 (48 S. W. Repr. 939). The form of the contract for durability and the term of years for which the guaranty shall be required are vested in the discretion of the municipal authorities. In the absence of evidence establishing an abuse of that discretion, the contract is binding upon all parties interested. A contract might be so drawn, containing covenants so absurd, that a court would be justified in holding, without extrinsic evidence, that the contract was not prima facie evidence of the amount properly chargeable to original construction, but to justify this the case must be clear. It is difficult to imagine a case in which the question of the number of years that a well constructed pavement of any given kind, on a particular street, ought to last without repair, when subjected to no injury but that resulting from the proper use of the street as a public highway, can become a question of law, to be determined without evidence. The durability of a pavement is dependent upon the materials of which it is composed, the manner in which they are applied and the traffic to which it is subject. A pavement of cut stone will probably last longer without requiring repair than one composed of wood. Any pavement will last longer in a street where the traffic is light than in a busy thoroughfare where there are many vehicles heavily ladened. The municipal authorities are

supposed to take into consideration all the circumstances surrounding the work about which they enter into a contract. They are vested with a discretion to determine the period of time to be covered by the covenants which they shall exact to secure durable work. The guaranty is but an incident of the bargain. The municipal authorities have jurisdiction to make the contract and the contractor is bound by it. As against the property owner who is to be assessed, the judgment of the municipal authorities as to what covenants are necessary to secure durable original construction must stand until it is clearly established by evidence that there has been an abuse of discretion. Had the defendant produced evidence which satisfied the court that a Trinidad asphalt pavement, laid in the best possible manner, could not reasonably be expected to resist the traffic of this particular street for seven years without repair, the conclusion that the contract price embraced compensation for repair in addition to that for skilful original construction would have logically followed. This he did not do. The petition, in which the defendant joined, to the councils to pave the street gave to the municipal authorities jurisdiction to do the work and assess the property of the defendant; all the proceedings were conducted and the property was assessed in accordance with the requirements of the statute. The Act of May 23, 1889, P. L. 323, section 22, made the lien prima facie evidence of the city's right to recover, and the defendant having failed to produce evidence tending to defeat that right the plaintiff was entitled to judgment for the balance due. The covenant required by the 11th section of the ordinance constituted a guaranty of the durability of the pavement for seven years, and we cannot in the absence of evidence hold as matter of law that this was an unreasonable requirement.

Even if the covenant be construed as binding the contractor to make repairs not made necessary because of defective original construction, and not as a guaranty of the durability of the work, the contract was still lawful. The petition of the defendant and his associates had given to the municipal authorities jurisdiction to pave the street and assess the property. The act of May 23, 1889, art. IV., sec. 6, provides that: " All work and materials required by the city shall be furnished, and the printing, advertising and all other kinds of work to be done for

the city, except ordinary repairs of highways, shall be performed under contract to be given to the lowest responsible bidder." The municipal authorities were required to have the paving of the street done under contract.   It is the duty of all municipal authorities to make provision for the repair of the pavements of the streets.   They may discharge this duty by buying the materials and having their own employees and laborers perform the work.   Cities of the third class are not required to have the repairing of the streets done under a contract, neither are they forbidden to do so.   They are vested with a discretion to determine the manner in which this work shall be done, and they may lawfully enter into a contract for repairing a street during a reasonable period in advance, in the same manner in which they may contract for any other work.   When municipal authorities are contracting for a pavement, the construction of which requires peculiar skill, they are not by law forbidden to incorporate covenants for the maintenance of the pavement in good condition during a reasonable period, and it is certainly in many cases expedient that they should do so.   " The preparation and laying of asphaltum as a pavement require special skill, and the quality of the pavement cannot well be ascertained by municipal authorities without the test of time.   It is therefore reasonable that those who lay such pavement should submit it to this test in order to insure its goodness.   And since the contractors who engage in this kind of work obtain their crude asphaltum from different sources and subject it to various processes of preparation, there is a manifest fitness in providing that those who laid the original pavement should relay it whenever openings are made, so that uniformity of work and materials may be secured.   It thus appears that the guaranty of durability and the stipulation for repaving are but incidents of the principal object of the bargain, dictated by prudence and therefore rightly included with it in the single contract: " Wilson v. Trenton, 61 N. J. L. 599, (40 Atl. Repr, 575).   The municipal authorities had power to make this contract, the expediency of making it was for them to decide.   The defendant made no attempt to have the execution of the contract restrained, upon the ground that he was entitled to have the cost of the pavement for which he was to be assessed separately and definitely ascertained before the work was done.   He permitted

the work to be done, and after it was done he received legal notice that his property was to be assessed for the improvement and permitted the assessment to be made without question. He now seeks to escape payment of his share of the expense of the improvement which he joined in procuring the city to make, upon the allegation that the contract required the contractor to keep the pavement in repair for the period of seven years. The case was tried in the court below more than six and one half years after the pavement had been completed, when almost the entire period covered by the covenants in question had expired, and yet this defendant did not produce evidence that the contractor had ever expended one cent in repairing this street. The city being authorized to make the contract, the money paid out under it was lawfully expended, and there is nothing in the case to indicate that it was not wisely expended. If it had been established by evidence that the nominal price of the pavement included compensation to the contractor for a covenant to make repairs not chargeable to the property, and that the price paid for original construction was to that extent excessive, the defendant would have been entitled to have the claim reduced by the amount of his share of the excess so established by the evidence to be therein included. This would not have invalidated the lien as a whole. That an owner may be compelled to pay a fraction of a tax imposed upon his property because of a benefit specially conferred, was expressly decided in Pepper v. Philadelphia, 114 Pa. 96, and has never in Pennsylvania been seriously questioned. Even where the contract is fraudulently let, and not to the lowest responsible bidder, and the work is defectively done, a property owner must show special injury to himself; it is not sufficient to assert that the work was let at too high a price, without showing what would be a fair price: Pittsburg v. MacConnell, 130 Pa. 463; Erie v. Butler, 120 Pa. 374. The city, having lawfully expended the money paid out under this contract, had jurisdiction to assess the property of the defendant for his share of the cost of the original construction of the pavement, whatever that cost might be. The municipal authorities made the assessment, after notice to the defendant, and filed the municipal lien in accordance with the provisions of the statute, and the act of 1889 makes that lien prima facie evidence of the amount which

the city is entitled to recover. The burden was upon the defendant to overcome plaintiff's prima facie case : Watson v. Philadelphia, 93 Pa. 111. He attempted to do this by saying, in effect, " It appears upon the face of the contract that the price paid for this pavement may have been more than the original construction was worth." He was bound to go further than this and produce evidence from which the court might find not only that the price was excessive but make some reasonable estimate of the amount of that excess : Pittsburg v. MacConnell, supra. The defense seems to be not only without merit but without sufficient evidence to support it.

The questions presented by this record were not considered by the Supreme Court in the recent case of Scranton City v. Sturges, 202 Pa. 182. The decision in that case was that an action of assumpsit will not lie for a claim of this character, even if it be well founded on a legal demand. The facts in that case are thus stated in the opinion of the Supreme Court, viz : " The defendant paid his assessment of the original cost (of the pavement) but refused to pay for repairs ; before the expiration of the five years, the city for the benefit of the contractor brought this suit in assumpsit against defendant to recover his ratable portion of the cost of those repairs." It thus appears that what was there decided was that, when an owner of abutting property has paid his share of the original cost of the pavement, there can be no recovery against him in an action of assumpsit for his ratable portion of the cost of repairs subsequently made. " In determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, the value of the first, usually, is measured by its similarity or dissimilarity to the second in its controlling facts. And even if the court, announcing the conclusion, misapprehends or mistakes the facts, the conclusion, to be of any value as a precedent, must be taken as applicable to the facts as assumed by the court; they, as concerns the judgment, are the facts, and whether existing or nonexisting either prompt or compel the conclusion of law that determines the judgment: " Mr. Justice DEAN in Yoders v. Amwell Township, 172 Pa. 457.

The judgment is reversed, and judgment is now entered in favor of the plaintiff and against the defendant in the sum of $ 365.31, with costs.